UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| BUCKS COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 2:23-cv-00982-MHW-KAJ |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | Judge Michael H. Watson |
| vs. | ) ) | Magistrate Judge Kimberly A. Jolson |
| NORFOLK SOUTHERN CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) ) ) | |

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER VENUE

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
ASHLEY M. PRICE (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
aprice@rgrdlaw.com

[Additional counsel appear on signature page.]

4858-6770-5704.v3

## I.    INTRODUCTION

Plaintiff Bucks County Employees Retirement System ("Plaintiff") respectfully submits this opposition in response to Defendants' Motion to Transfer Venue (ECF 23) (the "Transfer Motion" or "Mtn."). In their Transfer Motion, Defendants Norfolk Southern Corporation ("Norfolk Southern" or the "Company"), Alan H. Shaw, James A. Squires, and Mark R. George (collectively, "Defendants") contend that, despite Plaintiff's choice to lay venue in the Southern District of Ohio, this case should be transferred to the Northern District of Georgia. Defendants are wrong. The Transfer Motion ignores the strong connections that this action has to this District, while overstating the facts supporting transfer to Defendants' requested venue.

Defendants have not carried their burden of showing that Defendants' proposed forum is more convenient than Plaintiff's chosen venue. Indeed, the balance of public and private factors governing whether transfer of venue is appropriate under 28 U.S.C. §1404(a) ("Section 1404(a)") weighs heavily *against* transfer. *First*, the convenience of the parties and non-party witnesses favors this District due to the presence here of key witnesses who can provide testimony and evidence bearing directly upon the falsity and scienter elements of Plaintiff's claims in this securities fraud action. *Second*, this District is Plaintiff's first choice, a factor which is afforded considerable weight in the Sixth Circuit. *Third*, the interests of justice dictate that this District, in which there is singular localized interest in the facts and resolution of this litigation, be maintained as venue.

## II.    PROCEDURAL HISTORY

This action was initiated on March 16, 2023 with the filing of the Complaint for Violations of the Federal Securities Laws (ECF 1) (the "Complaint" or "Compl.").[1] On May 12, 2023, Defendants filed the Transfer Motion, requesting that the Court transfer this case to the Northern

---

[1]    All capitalized terms used in this Opposition that are not otherwise defined herein have the same meaning as set forth in the Complaint.

4858-6770-5704.v3

District of Georgia.  Mtn., ECF 23 at PageID 86.  The Transfer Motion attaches the Declaration of Denise Hutson in Support of Defendants' Motion to Transfer Venue (the "Hutson Declaration" or "Hutson Decl."), ECF 23 at PageID 105.  However, because the Hutson Declaration is based primarily on personal belief, it is improper and should hold no weight in the consideration of this motion.  The Transfer Motion fails to meet Defendants' burden justifying a transfer, and therefore should be denied.[2]

## III.    ARGUMENT

When requesting transfer, "a defendant confronts an uphill climb."  *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 2023 U.S. Dist. LEXIS 81528, at *17 (S.D. Ohio May 9, 2023).  Defendants, as the moving party, have "the burden of demonstrating that the case should be transferred to a different forum."  *First Bank of Marietta v. Bright Banc Sav. Ass'n*, 711 F. Supp. 893, 897 (S.D. Ohio 1988).  "'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *Nat'l Republican*, 2023 U.S. Dist. LEXIS 81528, at *17-*18 (quoting *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009)).[3]  Defendants here have not met the "substantial" burden required to show that transfer is necessary.  *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 958 (M.D. Tenn. 2008); *see also Intrastate Distribs. Inc. v. Alani Nutrition, LLC*, 2021 U.S. Dist. LEXIS 232985, at *24 (E.D. Mich. May 28, 2021) ("'mere assertions or speculation, without evidence'" are insufficient to meet defendant's "heavy" burden to show that a venue transfer is appropriate).

---

[2]    On May 24, 2023, the Court issued a Show Cause Order directing Plaintiff to explain why its claims should be adjudicated in the Eastern Division of the Southern District of Ohio, as opposed to the Western Division of the Southern District of Ohio.  ECF 27 (the "OSC").  Plaintiff filed its response on May 31, 2023.  ECF 30 (the "Response to OSC").  On June 7, 2023, Defendants filed their Response to Plaintiff's Response to Show Cause Order as to Why Venue is Proper in the Eastern Division.  ECF 36.  The Court has not ruled on the Show Cause Order.

[3]    Unless otherwise noted, emphasis is added and citations are omitted throughout.

4858-6770-5704.v3

The inquiry into whether transfer of venue is proper under Section 1404(a) requires a court to determine "whether consideration of convenience to parties and witnesses and other burdens associated with proceeding in the agreed jurisdiction render enforcement unreasonable under the circumstances." *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991).  This is not an inquiry for which one size fits all, but rather one that must be dealt with "according to an individualized, case-by-case consideration of convenience and fairness" based on "a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 29 (1988).

The Sixth Circuit, in providing guidance on this inquiry, has ruled that "a district court should consider the private interests of the parties," as well as "public-interest concerns." *Moses*, 929 F.2d at 1137.  When evaluating the private interests of the parties, courts consider the convenience of the parties and the witnesses, while keeping in mind that the "plaintiff's choice of forum should seldom be disturbed unless the balance is strongly in favor of the defendant." *Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F. Supp. 193, 197-98 (S.D. Ohio 1981) (citing *Sun Oil Co. v. Lederle*, 199 F.2d 423 (6th Cir. 1952)).  Factors comprising the public-interest concerns of the litigation include "the local interest in deciding local controversies at home; [and] the public policies of the fora." *Slate Rock Constr. Co. Ltd. v. Admiral Ins. Co.*, 2011 U.S. Dist. LEXIS 97122, at *30 (S.D. Ohio Aug 30, 2011).

Notably, Defendants' Transfer Motion rests on the premise that venue may properly be laid in this District – a point Defendants must concede since the special venue provisions of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78aa, and the general venue provision for civil actions, 28 U.S.C. §1391(b), provide for venue of this action in this District. *See also Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) (Section 1404(a) "permits transfer to any district where venue is ***also*** proper").  Rather, Defendants' Transfer Motion contends that venue would purportedly be more convenient in the Northern District

- 3 -

of Georgia.  Yet, Defendants have not carried their burden.  Because the weight of the relevant

public and private factors favors Plaintiff's choice of forum, venue should remain in the Southern

District of Ohio.

**A.      Section 1404(a)'s Private Factors Militate Against Transfer Because Key Non-Party Witnesses Are Here, Defendants Routinely Litigate Here, and Columbus Is Plaintiff's Chosen Venue**

**1.      The Convenience of the Parties and Non-Party Witnesses Weighs Against Transfer**

The presence of important non-party witnesses and evidence in this District supports

retaining venue in the Southern District of Ohio.  *See, e.g.*, *Apex Sales Agency v. Phx. Sintered*

*Metals, Inc.*, 2006 U.S. Dist. LEXIS 77302, at *8 (N.D. Ohio Oct. 23, 2006) (crediting "non-party

witnesses in Ohio" against changing venue).  In the context of a motion to transfer venue, party

witnesses have less significance than non-party witnesses.  *Zimmer Enters. v. Atlandia Imps., Inc.*,

478 F. Supp. 2d 983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience of witnesses who

are employees "will not ordinarily be considered, or at least, that the convenience of such employees

will not generally be given the same consideration as is given to other witnesses"); *Lynn v. Becton*

*Dickinson and Co.*, 2022 U.S. Dist. LEXIS 36371, at *10 (S.D. Ohio Mar. 2, 2022) ("the location of

witnesses who remain employed by [d]efendant is not properly considered, as employers are

presumed to be able to compel their appearance in any appropriate forum").  These non-party

witnesses and evidence will support Plaintiff's proof of the substantive falsity and scienter elements

of the securities fraud claim at issue in this case.  *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455,

470-73 (6th Cir. 2014) (discussing falsity and scienter elements).

Specifically, several non-parties, whose documents and testimony will likely comprise

significant components of Plaintiff's proof, are located in Columbus.  As Plaintiff alleges: "In Ohio,

[Norfolk Southern] employs the well-connected Columbus-based lobbying firm called The Success

Group.  Governor DeWine's former legislative director Dan McCarthy led the firm prior to joining

- 4 -

the administration." Compl., ECF 1 at PageID 12, ¶38. Indeed, Plaintiff believes that at least *six* important Success Group witnesses reside or work in Columbus (namely, Dan McCarthy, McKenzie Davis, Anthony Aquillo, Michael Toman, Robert Van Kirk, and The Success Group legal entity).[4] These percipient witnesses can provide vital testimony showing – contrary to Defendants' representations about designing capital spending programs to provide safe railroads (Compl., ECF 1 at PageID 13, ¶40) – that Norfolk Southern contemporaneously paid lobbyists "*to prevent safety regulations* that would increase costs and harm operating margins." *Id.* at PageID 11-12, ¶36. In other words, The Success Group's evidence will help the jury find falsity and scienter in Plaintiff's favor. Thus, the ability of non-party witnesses to appear at trial, and the related ability of the trial court to summon key witnesses to provide testimony during trial, renders this venue more convenient. *See Sanhua Int'l, Inc. v. Riggle*, 2019 U.S. Dist. LEXIS 80240, at *21 (S.D. Ohio May 13, 2019) (in evaluating the convenience of non-party witnesses, "courts consider whether such witnesses would be subject to compulsory process"). These facts justify maintaining venue in this District.

In their Transfer Motion, Defendants make no mention of Norfolk Southern's lobbying efforts in the Southern District of Ohio or the presence of key non-party witnesses here. Instead, arguing that the Northern District of Georgia is the more appropriate venue, Defendants' arguments exclusively concern the convenience of the parties: (i) that the Northern District of Georgia is more convenient to Defendants and their own witnesses because the "Company's corporate headquarters" and Norfolk Southern's "current or former executives, directors, or employees" are located there;

---

[4]    *See* Response to OSC, Ex. 1, ECF 30-2 at PageID 253; *compare with id.*, Ex. 2, ECF 30-3 at PageID 256 (showing four Success Group lobbyists – McKenzie Davis, Anthony Aquillo, Michael Toman, and Robert Van Kirk – all registered as Norfolk Southern agents with their official addresses at East State Street in Columbus); *see also id.*, Ex. 2, ECF 30-3 at PageID 257 (The Success Group internet homepage: "We advocate for clients who have interests before the state legislature and Ohio's executive agencies."); *see also* Compl., ECF 1 at PageID 11-12, ¶¶36, 38 ("In Ohio, the Company employs the well-connected Columbus-based lobbying firm called the Success Group.").

4858-6770-5704.v3

and (ii) that this District is not more convenient for Plaintiff or putative class members.  Mtn., ECF 23 at PageID 97-100.  These arguments are insufficient to warrant transfer.

As an initial matter, Defendants' assertions of inconvenience based on the location of corporate personnel and documentary evidence in the Northern District of Georgia as opposed to this District carry little weight.  *See Slate Rock*, 2011 U.S. Dist. LEXIS 97122, at *27-*28 ("a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to support a change of venue"); *Kirk v. Shaw Env., Inc.*, 2010 U.S. Dist. LEXIS 142738, at *9 (N.D. Ohio Feb. 5, 2010) (same).  "Generally a defendant that does business nation-wide may not obtain a transfer to the district where its main office is solely for that reason."  *Shapiro v. Merrill Lynch & Co.*, 634 F. Supp. 587, 590 (S.D. Ohio 1986).  Instead, the convenience of non-party witnesses, rather than a defendant's employee witnesses, is accorded greater weight when considering transfer.  *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 777 (S.D. Ohio 2022).  Indeed, as is the case here, "even if defendant's main offices and relevant actions are based elsewhere, some transactions which may be critical to this case allegedly took place in this district."  *Shapiro*, 634 F. Supp. at 590.  Such "transactions," as detailed above, involve Norfolk Southern's lobbying activities, including its engagement of The Success Group.  The relevance of these "transactions" to proving the securities fraud claims here strongly weighs in favor of laying venue in this District.

To be sure, such "transactions" are demonstrably absent in *Turner v. Shaw, et al.*, No. 2:23-cv-1305 (S.D. Ohio),[5] which Defendants cite as supporting their argument that this case should be transferred from this District.  Mtn., ECF 23 at PageID 90.  That case, however, had **no** legal or factual overlap with this case and alleged **no** facts at all taking place in the Southern District.

---

[5]   Defendants incorrectly cited the Northern District of Ohio, instead of this Court, as issuing this order in *Turner*.

- 6 -

Rather, *Turner* was brought by an inmate alleging that his Eighth Amendment rights were violated when chemicals released by the derailment in East Palestine, Ohio contaminated the air and water in the vicinity of the penitentiary in Youngstown, Ohio.  Complaint, *Turner*, ECF 1-1 at PageID 27-29 (S.D. Ohio Apr. 13, 2023).  The factual locus of *Turner* is thus uniquely confined and precisely none of the operative facts in the *Turner* case are related to this District.  *Turner*, then, does nothing to carry Defendants' heavy burden of demonstrating this case should be transferred to another venue.

Moreover, Defendants' argument premised on the fact that Norfolk Southern's corporate documents are located in Georgia also falls flat given that document productions are routinely made electronically (and here, will be overseen by Defendants' counsel located in New York).  *Lynn*, 2022 U.S. Dist. LEXIS 36371, at *9 ("standard litigation practice in the year 2022" is to "exchange documents electronically," making "the documents' original location . . . irrelevant" to considerations of venue); *Doe v. Univ. of Tenn.*, 2016 U.S. Dist. LEXIS 41226, at *28 (M.D. Tenn. Mar. 29, 2016) ("in this age of technology," the court was "not swayed" by defendant's venue argument based on the location of evidence).

To the contrary, Norfolk Southern's large-scale operations support holding venue in this District.  *Shapiro*, 634 F. Supp. at 590 (denying motion to transfer under Section 1404(a) in securities class action and ruling "[b]y undertaking a nation-wide business, a corporation assumes the risk of amenability to suit throughout the nation").  The fact that Norfolk Southern has litigated more than 100 cases since 2000 in this District alone confirms the Company's reach and amenability to litigation in this Court.  Response to OSC, Ex. 4, ECF 30-5 at PageID 268.  The presence of Norfolk Southern's employee witnesses (*see supra* at 4-5) or documents elsewhere is comparatively insignificant under these circumstances.  Defendants' routine litigation in this Court thus supports maintaining venue here.  *See Ajose v. Interline Brands, Inc.*, 2015 U.S. Dist. LEXIS 133068, at *7

4858-6770-5704.v3

(M.D. Tenn. Sept. 30, 2015) (finding that defendant's presence in the forum in another litigation indicated that it "is not prohibitively inconvenient for [d]efendant").

Furthermore, according to the Hutson Declaration, defendant James A. Squires "resides in New Hampshire" following his retirement from the Company on May 11, 2023, and the "primary residence" of defendant Mark R. George is "located in Florida." Hutson Decl., ECF 23 at PageID 106, ¶¶7, 8. Therefore, when appearing for this litigation, regardless of where it is ultimately located, two of the three witnesses whom Defendants identified will likely need to travel. The convenience of Defendants, therefore, does not support transfer in light of the other factors. *See Reese*, 574 F.3d at 320 (upholding the district court's denial of a transfer motion, even where the defendants and "most of the class members" lived in the jurisdiction of the transferee court, because the weight of the other factors was such that defendants were unable to make a showing sufficient to overcome the plaintiff's choice of forum).

Finally, Defendants' arguments regarding the convenience of the Plaintiff do not support transfer. While Plaintiff is not located in this District, neither is it located in the Northern District of Georgia, making this factor a nullity. Rather, Plaintiff **has** shown that important, non-party witnesses are present in this District. *Supra* at 4-5. Meanwhile, the case upon which Defendants base their argument regarding the convenience of class members addressed very different facts. Mtn., ECF 23 at PageID 98. In that case, the court found that a large percentage – 41% – of a putative class of "thousands" resided "in . . . or adjacent to" the Transferee forum, whereas only "54 or 55" members of the putative class resided in the plaintiff's chosen venue. *Traylor v. Avnet, Inc.*, 2008 U.S. Dist. LEXIS 140614, at *4 (S.D. Ohio Apr. 29, 2008). Defendants here have made no such showing about the relative concentrations of putative class members. Thus, weighed together, the convenience of the parties and non-party witnesses strongly favors the Southern District of Ohio as the proper venue, and therefore "Defendants have failed to carry their heavy burden of proving

- 8 -

4858-6770-5704.v3

that the Southern District of Ohio is an inconvenient forum for all parties." *Mead Corp. v. Oscar J. Boldt Const. Co.*, 508 F. Supp. 193, 194 (S.D. Ohio 1981).

### 2.    The Weight of Authority Strongly Favors Holding Venue in Plaintiff's Chosen District

Plaintiff's choice of forum strongly favors laying venue in this District. *Atl. Marine Constr.*, 571 U.S. at 63 ("Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'"); *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951) ("the plaintiff's choice of forum should rarely be disturbed"); *W. Am. Ins. Co. v. Potts*, 1990 U.S. App. LEXIS 12513, at *6 (6th Cir. July 25, 1990) (unpub.) ("Foremost consideration must be given to the plaintiff's choice of forum.") (citing *Nicol*, 188 F.2d at 537); *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 214 (S.D. Ohio 1989) (denying defendant's motion to transfer and holding "*Nicol* remains the controlling Sixth Circuit decision on this issue and has been followed, either expressly or impliedly, by" a number of authorities in this circuit); *see also Shapiro*, 634 F. Supp. at 589 (rejecting venue change in securities class action and noting plaintiff's venue choice entitled to deference).

Nevertheless, Defendants contend that "Plaintiff's choice of forum is entitled to minimal deference." Mtn., ECF 23 at PageID 101. In support of this argument, Defendants cite *Schoenfeld v. Mercedes-Benz USA, LLC* and *Cescato v. Anthem, Inc.*, both of which are distinguishable. In *Schoenfeld*, the court determined that the plaintiff's forum choice ***was*** afforded "some" weight "given that certain operative facts took place in Ohio." *Schoenfeld v. Mercedes-Benz USA, LLC*, 2021 U.S. Dist. LEXIS 152480, at *7 (S.D. Ohio Aug. 13, 2021). The court in *Schoenfeld* granted the motion to transfer because a key piece of physical evidence – the vehicle at issue in a lemon law dispute – was located in Florida and was unsafe to drive, while plaintiff had filed in the Southern District of Ohio. *Id.* at *8-*9. Here, unlike in *Schoenfeld*, there is no physical evidence that would

- 9 -

be difficult or expensive to move to Ohio.  Indeed, the opposite is true, as the location of vital witnesses and potential evidence in this case is located in Columbus, which sits in the Southern District of Ohio.  *See supra* at 4-5.

*Cescato* is likewise distinguishable.  There, though no class had been certified, the plaintiff contended that many members of the purported class were residents of the state, which the court viewed as an attempt to "pre-certify a class for purposes of ruling on the instant motion."  *Cescato v. Anthem, Inc.*, 2005 U.S. Dist. LEXIS 34578, at *8 (N.D. Ohio Dec. 21, 2005).  Moreover, the court found that plaintiff filed in their chosen venue, in part, because they knew that their claims were barred by the statute of limitations in the proper venue, which, in the court's view, was a blatant attempt to forum shop.  *Id.* at *12.  Neither of these problems is at issue here.

Although Plaintiff is not located in Ohio, neither of these cases suggests that its selection of this District for the venue should be given "minimal" deference, as Defendants claim.  Mtn., ECF 23 at PageID 101.  Unlike the plaintiffs in *Shoenfeld* and *Cescato*, Plaintiff here has legitimate grounds for filing in this District.  Therefore, when examining all the factors in their totality, Plaintiff's lack of a direct connection to Ohio is insufficient to warrant transfer.  *See Ajose*, 2015 U.S. Dist. LEXIS 133068, at *9 (defendant failed to bear its burden of demonstrating that "private interest concerns weigh[ed] strongly in favor of transfer," even where plaintiff had "no ties" to the district, since that fact alone does not defeat plaintiff's forum choice).

**B.      Section 1404(a)'s Public Factors, Including Localized Interest in Defendants' Lobbying Activities in This District and Similar Docket Conditions as Compared with the Transferee Court, Weigh Against Transfer**

Contrary to Defendants' claim that "this District has no specific connection to the statements at issue" (Mtn., ECF 23 at PageID 101), local public interest in Norfolk Southern's lobbying activities via The Success Group – coupled with local public policy interests in Ohio's legislative process – further demonstrate there is good reason to adjudicate this case in this District.

- 10 -

4858-6770-5704.v3

*First*, local media investigations reflect intense public interest in the relationship between Norfolk Southern's lobbying activities in Columbus and its train wrecks throughout Ohio. *See, e.g.*, Response to OSC, Ex. 5, ECF 30-6 at PageID 284 (local Columbus media discussing how Norfolk Southern helped "bankroll" the governor's inauguration festivities); *see also id.*, Ex. 6, ECF 30-7 at PageID 293 (discussing relationship between The Success Group's Norfolk Southern lobbying activities and legislation); *id.*, Ex. 3, ECF 30-4 at PageID 267 (discussing four derailments in "less than five months" because Norfolk Southern is "more concerned with its profit margin than with Ohioans' safety"); *id.*, Ex. 7, ECF 30-8 at PageID 302 (noting "Ohioans are paying the price" for lobbyists "fighting every effort" to make railroads safe). These facts favor holding venue in this District because they demonstrate the local jury pool's interest in how Norfolk Southern made significant expenditures fighting against rail safety legislation in Ohio – and in ***Columbus in particular*** – as Plaintiff alleges. Compl., ECF 1 at PageID 11-12, ¶¶36, 38; *Nicol*, 188 F.2d at 538 (local jury's relationship to the litigation relevant to venue analysis); *Slate Rock*, 2011 U.S. Dist. LEXIS 97122, at *21 ("local interest in deciding local controversies at home" is relevant to the Section 1404(a) inquiry).

*Second*, the "public policies of the fora" weigh in favor of holding venue in this District. *Id.* Columbus media have investigated and reported that Norfolk Southern "employ[s] a well-connected firm called The Success Group" and how "Gov. DeWine's former legislative director Dan McCarthy led the firm prior to joining the administration." Response to OSC, Ex. 6, ECF 30-7 at PageID 295. "As a lobbyist, McCarthy worked on behalf of FirstEnergy and set up the dark money group Partners for Progress. Prosecutors allege Partners for Progress funneled money to groups controlled by former House speaker Larry Householder as part of the multi-million dollar racketeering scheme." *Id.* As Ohio's capital, Columbus has an acute interest in how Ohio's laws are affected by local lobbyists employed by large corporations like FirstEnergy and Norfolk Southern. Local media

4858-6770-5704.v3

noted, for example, that Norfolk Southern's lobbying "efforts . . . were devoted to defeating legislation that would have established tougher safety standards for rail yards and train operations." *Id.*, Ex. 5, ECF 30-6 at PageID 285. Norfolk Southern's influence over the legislative process via The Success Group – in Columbus – further supports Plaintiff's venue choice.[6]

*Third*, public policy underlying the federal securities laws also supports adjudication of this case in this District as Plaintiff's selected venue. *See* Compl., ECF 1 at PageID 32-33, ¶¶101-106 (Exchange Act violations); *S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 74 (D. Conn. 1988) (Exchange Act's venue provision "represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue"), *aff'd sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989).

Finally, to argue that the interests of justice require transfer, Defendants compare the docket conditions in this District with those in Defendants' preferred Georgia venue. Mtn., ECF 23 at PageID 100. But no definitive conclusion can be drawn from Defendants' self-selected spotlight on certain statistics meant to depict a lighter caseload for judges in the Northern District of Georgia. For example, while the median expected time to the disposition of cases is "over 12" months in this District, as opposed to "11 months" in the Northern District of Georgia, a one-month discrepancy is not a particularly compelling justification for transfer. *Id.* What is more, while Defendants are correct that gross pending cases are 2,785 and 606 in this District and the Northern District of Georgia, respectively, Defendants conveniently omit the Weighted Filing statistics for each District, which "account for the different amounts of time district judges require to resolve" various actions, and assign higher weight "for more time-consuming cases" and lower weights to those cases

---

[6] The Success Group's lobbying activities, and their impact on the legislative processes in Columbus, are also at issue in another civil litigation pending in the Southern District of Ohio. *See In re FirstEnergy*, No. 2:20-cv-03785 (S.D. Ohio), ECF 407 and 438 (referencing The Success Group); *id.* at ECF 337, 350, 365, 378, 388, 392, 399-401, 407, 420, 438, 451 (referencing The Success Group's Dan McCarthy).

"demanding relatively little time from judges."[7]  The number of Weighted Filings in the Southern District of Ohio as of December 31 of 2022 is 640, compared with 538 for the Northern District of Georgia, indicating that the discrepancy between the docket conditions in this Court and in Defendants' preferred venue is even less significant than Defendants suggest.[8]  In any case, such caseload statistics are not significant enough to warrant transfer.  *See, e.g.*, *ITS Fin., LLC v. Advent Fin. Servs., LLC*, 2010 U.S. Dist. LEXIS 95025, at *11-*12 (S.D. Ohio Aug. 23, 2010) (finding that the "'docket congestion'" factor does not "'strongly'" favor transfer).

### C. The Hutson Declaration Is Improperly Based on Personal Belief and Should Be Stricken, or, in the Alternative, Plaintiff Should Be Permitted to Depose Hutson

Like any declaration or affidavit, declarations supporting a motion to transfer venue must be admissible, and therefore must be made according to the declarant's personal knowledge.  *See Odom Indus., Inc. v. Diversified Metal Prods.*, 2012 U.S. Dist. LEXIS 135952, at *20-*24 (S.D. Ohio Sep. 24, 2012) (citing Fed. R. Evid. 602) (discussing defendant's arguments that affidavits submitted by plaintiff along with their response to a motion to transfer venue should be stricken due to lack of personal knowledge).  "[T]he district court has discretion to determine whether it can differentiate between knowledge and belief for each averment in the affidavit," and if it cannot differentiate between the two, the court may strike the affidavit.  *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

---

[7] *Explanation of Selected Terms*, U.S. COURTS (March 2012), https://www.uscourts.gov/sites/default/files/explanation-selected-terms-district-march-2012_0.pdf.

[8] *Chart of U.S. District Courts National Caseload Profile*, U.S. COURTS (Dec. 31, 2022), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2022.pdf.

4858-6770-5704.v3

Here, Defendants' Transfer Motion is underpinned by the Hutson Declaration, which was signed by Denise Hutson, Norfolk Southern's Corporate Secretary. Hutson Decl., ECF 23 at PageID 105, ¶1. Hutson's statements regarding the location of evidence and witnesses are key to Defendants' contentions that venue is better laid in the Northern District of Georgia than in this District. Mtn., ECF 23 at PageID 95-96; Hutson Decl., ECF 23 at PageID 106, ¶¶6-12. Yet, because the Hutson Declaration is not clearly based on Hutson's personal knowledge, it should be stricken. Alternatively, consistent with rulings of some courts in this District, upon finding that an affidavit or declaration is based upon beliefs, rather than personal knowledge, the appropriate remedy may be to "simply disregard the inadmissible portions of the declarations." *Sisson v. OhioHealth Corp.*, 2013 U.S. Dist. LEXIS 162464, at *8 (S.D. Ohio Nov. 14, 2013).

As an initial matter, ¶¶10-12 of the Hutson Declaration – all of which are essential to Defendants' arguments – should be stricken as a matter of law because they state that they are based, at least in part, on the "belief" of the declarant. Hutson Decl., ECF 23 at PageID 106, ¶¶10-12; *see Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co., Ltd.*, 2008 U.S. Dist. LEXIS 99395, at *11 (S.D. Ohio Dec. 9, 2008) (citing *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978)) ("statements prefaced by 'I believe' or those made upon 'understanding' are properly subject to a motion to strike"); *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 956 (S.D. Ohio 2000) ("the term 'belief' fails to indicate the basis for the stated facts").

More generally, it is not clear whether the Hutson Declaration, in its entirety, is based on Hutson's personal knowledge. *Odom Industries* provides a useful comparison in the context of affidavits submitted to support arguments regarding venue transfer and the corporate contacts with the relevant jurisdictions. There, a court in this District found that the declarant had sufficient personal knowledge to sustain the declaration in question because the declarant was a corporate officer of the company, noting that "the Sixth Circuit recognizes that corporate officers are presumed

- 14 -

to have personal knowledge of the acts of their corporations and may set forth those facts in an affidavit." *See Odom Indus.*, 2012 U.S. Dist. LEXIS 135952, at *23.  Here, Hutson is not an executive officer (*see* Ex. 1 at K-17, attached to the Declaration of Ashley M. Price in Support of Plaintiff's Opposition to Defendants' Motion to Transfer, filed concurrently herewith), but rather the Corporate Secretary for Norfolk Southern, and therefore is entitled to no such presumption.  Hutson Decl., ECF 23 at PageID 105, ¶1.

Moreover, while recognizing that "personal knowledge may be derived from [the declarant's] review of business records," the *Odom* court noted that the declarant in that case averred that he "maintain[s] or maintained custody" of the company's business records, that he was "familiar with [the corporation's] method and procedures for generating, storing, and organizing the records and documents," and that he, in his declaration, described the exact ways in which the records at issue were created and stored. *Odom Indus.*, 2012 U.S. Dist. LEXIS 135952, at *22; Hutson Decl., ¶¶22-24.  No such description exists in the Hutson Declaration.  Rather, the Hutson Declaration makes assertions – not of fact, but of inadmissible "belief" – that are supported merely by a "review of information and records kept by Norfolk Southern in the regular course of business" – though without ever specifying which records, or any other details to provide a basis for the declarant's "knowledge and belief." Hutson Decl., ECF 23 at PageID 105-06, ¶¶2, 10-12.  Because the Hutson Declaration fails to distinguish between assertions based on knowledge and belief, it should be stricken. *See Ondo*, 795 F.3d at 605 ("[T]he district court has discretion to determine whether it can differentiate between knowledge and belief for each averment in the affidavit . . . .  If the court cannot differentiate between the two . . . the court must strike the affidavit in its entirety.").

Unlike Hutson and Defendants, Plaintiff does not have access to Norfolk Southern's internal documents, and is thus prejudiced by the informational disadvantage caused by injecting self-serving insider statements into these proceedings.  Specifically, at this stage in the litigation, Plaintiff has

- 15 -

had no opportunity to depose Hutson, nor access to Company records that may contradict the assertions made in the Hutson Declaration. Therefore, Plaintiff requests that the Court either strike or, alternatively, disregard the Hutson Declaration in its entirety.

Plaintiff's disadvantage at this stage of the litigation is imposed by law. The Private Securities Litigation Reform Act ("PSLRA") imposes a mandatory stay of discovery, rendering Plaintiff unable to meaningfully rebut any of Hutson's assertions. 15 U.S.C. §78u-4(b)(3)(B); *Nichting v. DPL Inc.*, 2011 U.S. Dist. LEXIS 76739, at *9-*10 (S.D. Ohio July 15, 2011) ("The PSLRA prohibits discovery unless Plaintiff makes a showing 'that particularized discovery is necessary to . . . prevent undue prejudice to that party.'"). While taking advantage of the PSLRA provision staying discovery until after a ruling on the motion to dismiss, Defendants have prejudicially made use of evidence to which only they have access. As a result, Defendants have undue influence over the factual record with respect to these proceedings and their Transfer Motion. This not only endangers Plaintiff's ability to litigate this case in its chosen venue, but, in the event that transfer is granted, endangers Plaintiff's ability to call key witnesses at trial. *See infra* at 5. *See also In re Delphi Corp.*, 2007 U.S. Dist. LEXIS 10408, at *20 (E.D. Mich. Feb. 15, 2007) ("'Undue prejudice' has been defined as 'improper or unfair treatment rising to a level somewhat less than irreparable harm.'"). Thus, in lieu of striking the Hutson Declaration, Plaintiff proposes that this Court lift the discovery stay for the limited purpose of allowing Plaintiff to examine the bases of the Hutson Declaration. *Id.* at *13 (the PSLRA provides courts discretion to allow limited discovery to prevent undue prejudice).

## IV.    CONCLUSION

Because the weight of the Section 1404(a) factors, when viewed together, favors Plaintiff's chosen venue, Defendants have failed to carry their burden of showing the case should be

- 16 -

4858-6770-5704.v3

transferred.  Plaintiff respectfully requests that the Court deny Defendants' Transfer Motion and retain the Southern District of Ohio as the venue in which this case will be litigated.

DATED:  June 9, 2023

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY

s/ Joseph F. Murray
JOSEPH F. MURRAY (0063373)

1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON C. DAVIS (admitted *pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ASHLEY M. PRICE (admitted *pro hac vic*e)
JACK ABBEY GEPHART (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
aprice@rgrdlaw.com
jgephart@rgrdlaw.com

Attorneys for Plaintiff

- 17 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on June 9, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Joseph F. Murray
JOSEPH F. MURRAY

MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)

Email:  murray@mmmb.com

4858-6770-5704.v3

**Mailing Information for a Case 2:23-cv-00982-MHW-KAJ Bucks County Employees Retirement System v. Norfolk Southern Corporation et al**

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael G. Bongiorno**
  Michael.Bongiorno@wilmerhale.com

- **Jason C Davis**
  jdavis@rgrdlaw.com,aprice@rgrdlaw.com,jgephart@rgrdlaw.com

- **R Leland Evans**
  revans@dmclaw.com,rsilk@dmclaw.com,mkelley@dmclaw.com,ckrueper@dmclaw.com,mkleinman@dmclaw.com

- **George H Faulkner**
  faulkner@fhplaw.com,rosa@fhplaw.com

- **Scott Alan Fenton**
  sfenton@dmclaw.com,bguess@dmclaw.com

- **Jack Abbey Gephart**
  jgephart@rgrdlaw.com

- **Tamar Batya Kaplan-Marans**
  Tamar.Kaplan-Marans@wilmerhale.com

- **Mark David Landes**
  mlandes@isaacwiles.com,jslusser@isaacwiles.com,cbittner@isaacwiles.com

- **Joseph F Murray**
  murray@mmmb.com,tiffany@mmmb.com,stephaniec@rgrdlaw.com,creis@ecf.courtdrive.com,tiffany@ecf.courtdrive.com,murray@ecf.courtdrive.com,BCochran@rg

- **Ashley Marlene Price**
  aprice@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)