**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| BUCKS COUNTY EMPLOYEES RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>       Plaintiff,<br><br>   v.<br><br>NORFOLK SOUTHERN CORPORATION, ALAN H. SHAW, JAMES A. SQUIRES, and MARK R. GEORGE,<br><br>       Defendants. | Case No. 2:23-cv-00982-MHW-KAJ |

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION TO TRANSFER VENUE**</u>

**INTRODUCTION**

Defendants Norfolk Southern Corporation ("Norfolk Southern" or "Company"), Alan H. Shaw, James A. Squires, and Mark R. George (the "Individual Defendants" and together with Norfolk Southern, "Defendants") respectfully submit this Reply in further support of Defendants' Motion to Transfer Venue (ECF No. 23) (the "Transfer Motion") and in response to the Opposition filed by Plaintiff Bucks County Employees Retirement System ("Plaintiff") (ECF No. 37) (the "Opposition" or "Opp.").

Plaintiff's Opposition does not provide any legitimate reason to keep this Action in the Southern District of Ohio rather than transferring it to the Northern District of Georgia. Despite Plaintiff's attempt to reframe this Action to be about lobbying in Ohio, this case is about securities fraud claims relating to statements that a Georgia-based company made to its shareholders.

First, Plaintiff has not rebutted Defendants' showing that transferring this Action would be more convenient for the parties and witnesses. The only supposed witnesses in the District whom the Opposition identifies are employees of a lobbying firm in Columbus, Ohio, who are highly unlikely to possess any relevant (let alone admissible) evidence concerning any of the elements of Plaintiff's claims or Defendants' defenses. Second, Plaintiff's choice of forum is not entitled to any deference because Plaintiff has not applied to be a lead plaintiff, and therefore is unlikely to have any further involvement in this Action. Furthermore, neither Plaintiff nor either of the lead plaintiff applicants have any connection to the District, and the two lead plaintiff applicants did not even attempt to oppose the Transfer Motion. Third, Plaintiff's response to this Court's Order to Show Cause implicitly concedes that a substantial part of the events or omissions giving rise to the claim did not occur in any of the counties in the District.

Defendants, therefore, respectfully request that this Court grant their motion to transfer venue to the Northern District of Georgia.

## ARGUMENT

I.   **TRANSFERRING THIS ACTION TO THE NORTHERN DISTRICT OF GEORGIA WOULD BE MORE CONVENIENT FOR THE PARTIES AND WITNESSES**

A.   **The Opposition Does Not Identify Any Relevant Conduct or Witnesses in the District**

Plaintiff's claims are based on allegations that Defendants made materially false and misleading statements concerning the safety of Norfolk Southern's operations, and that the truth concerning those statements was allegedly revealed by a February 2023 derailment in East Palestine.  ECF No. 1 ("Compl.") at PageID 2-5 ¶¶ 4, 12-14, PageID 13-27 ¶¶ 39-83, PageID 30-31 ¶ 94.  All of this activity took place outside of this District.  Indeed, the Opposition does not identify any conduct associated with either the making of those statements or the February 2023 derailment that occurred in this District.  The Opposition also fails to identify any witnesses involved in the making of the statements at issue or who might possess relevant information about the derailment who reside in the District.  On these critical points, Plaintiff implicitly concedes that there is no connection between this Action and the District.[1]

The only potential witnesses whom Plaintiff identifies as having any connection to the District are lobbyists employed by the Success Group, which conducts business in Columbus, Ohio.  Opp. at PageID 324-325.  However, these purported witnesses have nothing to do with Plaintiff's allegations of securities fraud.

---

[1] Tellingly, the Opposition ignores an error by Plaintiff that Defendants pointed out in their opening brief:  Plaintiff's press release announcing the commencement of this lawsuit reveals Plaintiff's mistaken belief that the Action was filed "in the same district" where the East Palestine derailment occurred.  *See* Transfer Motion at PageID 90 n.1.

Significantly, Plaintiff does not allege that the Defendants made any misstatements or omissions concerning the Company's lobbying efforts.  Nor could Plaintiff plausibly assert such a claim given that its allegations concerning the Company's lobbying activity are drawn from the Company's own disclosures concerning political contributions and other political expenditures. *See* Compl. at PageID 11-12 ¶¶ 36-38.

Furthermore, the Complaint does not allege any facts suggesting that the Company's lobbying efforts had anything to do with the train derailment in East Palestine.  Plaintiff concedes that the Company's expenditures in Ohio (contributions totaling $98,000 over the last 5 years, Compl. at PageID 12 ¶ 38) pale in comparison to its lobbying efforts outside of Ohio (tens of millions over the years, Compl. at PageID 11-12 ¶ 36).  And the Complaint does not identify a single issue on which the Company engaged in lobbying activity in Ohio that had any connection to the derailment in East Palestine.  The Complaint identifies only two issues about which the Company allegedly engaged in lobbying activity in Ohio: (1) a minimum staffing requirement of a 2-person crew, and (2) penalties for blocked railroad crossings.  Compl. at PageID 12 ¶ 38.  But even if lobbying activity were somehow potentially relevant to this case, which it of course is not, the Complaint itself acknowledges that the train that derailed in East Palestine had a three-person crew, Compl. at PageID 17-18 ¶ 52, and that the derailment had nothing to do with the blocking of a railroad closing, Compl. at PageID 19 ¶ 54 n.4.

Contrary to Plaintiff's contention that non-party witnesses from the Success Group will provide "vital testimony" on falsity and scienter (Opp. at PageID 325), these witnesses are unlikely to possess *any* relevant information concerning any of the elements on Plaintiff's securities fraud

3

claims.[2]  As a result, this Court should not give any weight to the location of these irrelevant non-parties when considering whether to transfer this Action to the Northern District of Georgia.[3]

**B.     The Northern District of Georgia Would Be More Convenient For Witnesses Who Possess Information Relevant to the Claims and Defenses**

In contrast to the Opposition, which does not identify a single witness in the District who is likely to possess evidence concerning the statements at issue or the East Palestine derailment, Defendants' Transfer Motion identifies several key witnesses who work and/or reside in the Northern District of Georgia.  Most notably, the motion and supporting declaration of Denise Hutson (the "Hutson Declaration") demonstrate that the current executives who are named as defendants (Alan Shaw and Mark George) both work and maintain a residence in the Northern District of Georgia,[4] and that the former CEO and Board member (James Squires) resided and worked in the Northern District of Georgia during his tenure with the Company.  Because this is a

---

[2] Furthermore, much of the information that Plaintiff seeks to obtain from the lobbying firm would be subject to exclusion under Federal Rule of Evidence 403.  For example, Plaintiff alleges that the former leader of the non-party lobbying group was convicted of racketeering for allegedly taking $60 million from an Ohio utility company.  Compl. at PageID 12 ¶ 38.  This alleged conduct has absolutely nothing to do with Norfolk Southern.

[3] The cases that Plaintiff cites for the proposition that the location of non-party witnesses should be given more significance than party witnesses involved non-parties who possessed information that was critical to the claims and defenses in the Action.  *See Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 777 (S.D. Ohio 2022) (court anticipated with "almost certain[t]y" that both parties would rely heavily upon testimony from non-party Ohio-based witnesses); *Zimmer Enters. v. Atlandia Imps., Inc.* 478 F. Supp. 2d 983, 991 (S.D. Ohio 2007) (giving more significance to non-party witnesses who designed allegedly infringing clothing line).  And despite Plaintiff's reliance on *Lynn v. Becton Dickinson and Company*, there, the Court determined that the location of witnesses, including non-party witnesses, "neither favor[ed] nor disfavor[ed] transfer."  2022 U.S. Dist. LEXIS 36371, at *11 (S.D. Ohio Mar. 2, 2022).

[4] While the Opposition argues that the Northern District of Georgia would not be more convenient for Defendant Mark George—the Company's CFO—because his primary residence is in Florida (Opp. at PageID 328), it ignores the undisputed fact that Mr. George also maintains a residence in Georgia.

securities fraud action that turns on whether the Company's public statements were false and misleading, these executive officers who are named as defendants, as well as other current and former employees of Norfolk Southern, are likely to be the key witnesses in the Action. *See In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) ("[I]n cases where, as here, the plaintiff alleges that certain documents contained false or misleading statements, the key witnesses are frequently officers and employees of the issuer who participated in drafting or distributing those statements." (internal quotation marks omitted)).  The location of these individuals strongly favors transferring this Action to the Northern District of Georgia.

Because the Northern District of Georgia would be more convenient for these key witnesses, transferring this Action to the Northern District of Georgia would serve the interests of justice. *Bui v. Armes*, 2014 WL 4983670, at *5 (N.D. Ohio Oct. 6, 2014) (granting defendants' motion to transfer venue in a shareholder derivative action because "the individual defendants are key witnesses"); *RFF Family P'ship, LP v. Wasserman*, 2010 WL 420014, at *11 (N.D. Ohio Jan. 29, 2010) (finding plaintiff's choice of forum "[l]ess compelling" because defendants were likely to be key witnesses).[5]

Furthermore, Defendants' Transfer Motion and the Hutson Declaration demonstrate that the Company's corporate documents are located in the Northern District of Georgia at the Company's headquarters.  Plaintiff argues that the location of the Company's corporate documents

---

[5] In addition to the convenience of named Defendants, the Northern District of Georgia will very likely be more convenient for additional witnesses who may be asked to testify in this Action. Plaintiff does not dispute that many of the Company's current and former executives, directors, and employees—several of whom are likely to be called as witnesses in this Action—reside and work in the Northern District of Georgia.

should not dictate whether this case is transferred to the Northern District of Georgia.  But Plaintiff does not contest that the Company's corporate documents are located in the Northern District of Georgia.  Even if this factor is not enough, on its own, to warrant transferring the Action to the Northern District of Georgia, it is another factor that weighs in favor of granting Defendants' motion to transfer.  *Doshi v. Gen. Cable Corp.*, 2014 WL 12774226, at *2 (S.D.N.Y. Feb. 5, 2014) ("[T]he location of relevant documents and relative ease of proof" are among the factors courts commonly consider when deciding a motion to transfer); *Livermore v. Engles*, 2010 WL 2220307, at *6 (E.D. Tenn. Mar. 31, 2010) (finding location of relevant documents, books and records in derivative action weighed in favor of transfer).

Plaintiff does not (because it cannot) dispute that these individuals and documents are located in the Northern District of Georgia.  Instead, Plaintiff argues that the Court should simply ignore these facts because of various purported deficiencies with the Hutson Declaration.  But Plaintiff's arguments regarding the Hutson Declaration lack merit.  First, Plaintiff incorrectly argues that portions of the Hutson Declaration should be stricken because they are not based on personal knowledge, focusing particular attention on paragraphs 10-12, though such knowledge is not even required.  That argument is based on the inapplicable Federal Rule of Civil Procedure 56 standard for affidavits and declarations submitted in the summary judgment context, which is stricter than the standard for motions to transfer.  *See Tingley Systems, Inc. v. Bay State HMO Mgmt., Inc.*, 833 F. Supp. 882, 884 (M.D. Fla. 1993) ("[Section] 1404(a) does not expressly require that an affidavit submitted in support of a transfer motion be based on personal knowledge."); *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1300 & n.11 (M.D. Ga. Aug. 25, 2003) (contrasting standard for summary judgment and motion to transfer); *Nexen Petroleum U.S.A., Inc. v. Ensco Offshore Co.*, 2015 WL 6511879, at *6 (W.D. La. Oct. 27, 2015) (declining to apply Rule

56 standard to declarations supporting motion to transfer). More to the point, to the extent Plaintiff argues that Ms. Hutson is not presumed to have personal knowledge because, according to Plaintiff, she is supposedly somehow not a corporate officer, that argument is frivolous. The 2022 Annual Report from which Plaintiff submitted excerpts as Ex. 1 in support of its Opposition identifies Ms. Hutson as one of the Company's "Officers" in a section upon which Plaintiff did not rely. *See* Ex. 1 (2022 Annual Report at p. 8), attached to the Declaration of Tamar Kaplan-Marans in Support of Defendants' Reply Memorandum of Law ("Kaplan-Marans Decl."). Further, Ms. Hutson is also explicitly identified as a Corporate Officer on the Company's website. *See* Ex. 2, attached to Kaplan-Marans Decl. As the corporate secretary, she is plainly a "corporate officer [who] is competent to testify as to the actions of [her] corporation." *See Wash. Mut. Bank v. First Cap. Fin. Res.*, 2008 WL 11336274, at *3 (C.D. Cal. June 17, 2008). Plaintiff also argues that the Court should lift the discovery stay for the limited purpose of allowing Plaintiff to examine the bases of the Hutson Declaration. Opp. at PageID 336. But the PSLRA discovery stay may only be lifted upon a showing of "exceptional circumstances" when "particularized discovery is necessary to preserve evidence or to prevent undue prejudice." *See Ross v. Abercrombie & Fitch Co.*, 2006 WL 2869588, at *1 (S.D. Ohio Oct. 5, 2006); *Frank v. Dana Corp.*, 2007 WL 1748887, at *3 (N.D. Ohio June 18, 2007); *see also* 15 U.S.C. § 78u-4(b)(3)(B). No such exceptional circumstances are present here.

Because the people who are likely to serve as key witnesses in this Action reside and work in the Northern District of Georgia, and because the Company's corporate documents are located in the Northern District of Georgia, transferring this Action to the Northern District of Georgia would serve the interests of justice by contributing to the efficiency of discovery and trial.

## II.   PLAINTIFF'S CHOICE OF FORUM SHOULD NOT BE GIVEN ANY DEFERENCE

Plaintiff Bucks County Employees Retirement System incorrectly argues that its choice of forum should be given significant deference. Opp. at PageID 329-330. However, developments in this Action that have occurred since Defendants filed the Transfer Motion now make it even clearer that Plaintiff's choice of forum is entitled to *no* deference.

On May 15, 2023, two shareholders applied to be lead plaintiffs in this Action: Ironworkers Locals 40, 361 & 417 Union Annuity, Pension and Topping Out Funds and AkademikerPension. Notably, Plaintiff did not submit an application to serve as lead plaintiff. As the deadline to file oppositions to lead plaintiff applications approached, the two applicants submitted a "joint stipulation," stating that they had agreed (with each other) to serve as co-lead plaintiffs in this Action, subject to approval of the Court. Neither of the lead plaintiff applicants has filed an opposition to Defendants' Transfer Motion.

As a result of these developments, it does not appear that Plaintiff will have further involvement in this Action once the Court selects a lead plaintiff or plaintiffs. Numerous courts have found that a plaintiff's choice of forum is not entitled to deference when that plaintiff does not apply to be lead plaintiff or otherwise ceases to be involved in the litigation. *See Sanchez v. Centene Corp.*, 2017 WL 11496768, at *1 (C.D. Cal. Mar. 1, 2017) (declining to give deference to plaintiff's choice of forum where plaintiff did not move to be appointed lead plaintiff and none of the lead plaintiff applicants opposed transfer); *see also City of Miami Fire Fighters' & Police Officer's Retirement Trust v. CVS Health Corp.*, 2019 WL 13217378, at *3 (S.D.N.Y. Aug. 9, 2019) (finding plaintiff's choice of forum was neutral because plaintiff never sought to be lead plaintiff and was no longer a named plaintiff in securities class action); *Welch v. Pro-Benefit Staffing, Inc.*, 1990 WL 174885, at *4 n.6 (D. Colo. Nov. 7, 1990) (granting transfer motion

8

because, "[w]hile it is true that the plaintiff's choice of forum is usually given great weight, in the present situation the plaintiffs are no longer involved in the case except as potential witnesses").

Furthermore, even if Plaintiff were involved in this Action going forward, its choice of forum would be entitled to minimal weight because it is a resident of Pennsylvania and does not have any meaningful connection to this District. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 850 (S.D. Ohio 2007) (citing *Lindley v. Caterpillar, Inc.*, 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000) ("[W]hen the plaintiff does not live or work in [the chosen] jurisdiction, the significance of this preference is minimized.")); *see also* Transfer Motion at PageID 101.  None of the cases cited by Plaintiff involved a court giving deference to a forum that had little or no connection to the plaintiff or the litigation. *See Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951) (affirming order granting motion to change venue where witnesses, evidence, and alleged wrongdoing occurred in Nebraska rather than Michigan); *W. Am. Ins. Co. v. Potts*, 1990 U.S. App. LEXIS 12513, at *6 (6th Cir. July 25, 1990) (unpub.) (insurance dispute regarding Tennessee contract could proceed in Tennessee); *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 215 (S.D. Ohio 1989) (denying transfer motion after movants "concede[d] that a transfer would be less convenient for them"); *Shapiro v. Merrill Lynch & Co.*, 634 F. Supp. 587, 589 (S.D. Ohio 1986) (noting that "the weight accorded to the plaintiff's choice of forum is reduced where the plaintiff does not reside in the forum" or if the "case is brought as a class action"); *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013) (where there is forum selection clause, "the plaintiff's choice of forum merits no weight").

Similarly, Plaintiff's attempts to argue that there is a purported local interest in lobbying should not provide the basis for maintaining this case in this District.  As discussed above, Plaintiff does not allege that the Defendants made any misstatements or omissions concerning the

9

Company's lobbying efforts, nor does it allege any facts suggesting that the Company's lobbying efforts had any connection to the train derailment in East Palestine.

### III.    PLAINTIFF'S RESPONSE TO THE ORDER TO SHOW CAUSE DEMONSTRATES THAT TRANSFER IS APPROPRIATE

Plaintiff's response to this Court's Order to Show Cause further demonstrates the lack of connection to this District.  That response implicitly concedes that a substantial part of the events or omissions giving rise to Plaintiff's claims did not occur in any county in the District.

On June 12, 2023, Plaintiff filed a reply in support of its response to the Order to Show Cause.  Plaintiff's Reply to Defendants' Response, ECF No. 38.  In it, Plaintiff advanced several incorrect arguments for why their response to the Order to Show Cause should not be interpreted as a concession about the lack of relevant events or omissions in the District.

*First*, while Plaintiff argues that Local Rule 82.1(d) is "conspicuously absent from the Order," Plaintiff does not dispute that Local Rule 82.1 governs the question of venue in the District. ECF No. 38 at PageID 348.  Nor does Plaintiff explain why the lack of an explicit reference to Local Rule 82.1(d) in any way suggests that the Rule is not the appropriate rule for determining whether venue is proper in the Eastern Division of the District.[6]

*Second*, Plaintiff argues that, pursuant to Local Rule 82.1(e), venue lies in the Eastern Division because the Company allegedly engaged in lobbying activity in the Eastern Division,

---

[6] Incredibly, Plaintiff argues that a different subsection of Local Rule 82.1—namely, Local Rule 82.1(e)—applies here because, according to Plaintiff, "no defendant is a resident of this District." ECF No. 38 at PageID 348.  However, Norfolk Southern is deemed to reside in "any judicial district in which [it] is subject to personal jurisdiction with respect to the civil action in question," pursuant to 28 U.S.C. § 1391(c) (which Local Rule 82.1(d) identifies as the appropriate provision for determining residence of a corporation).  Plaintiff's submission does not even mention this provision, though it otherwise of course contends that this Court has personal jurisdiction over Norfolk Southern.  *See* Compl. at PageID 2-3 ¶ 4.

which Plaintiff argues constitutes "a substantial part of the events or omissions giving rise to the

claim occurred." ECF No. 38 at PageID 348. However, as discussed above, the alleged lobbying

activity is not even relevant to Plaintiff's claims. It strains credulity to suggest, as Plaintiff does,

that such activity constitutes "a substantial part of the events or omissions giving rise to the claim

occurred."

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that, pursuant to 28 U.S.C.

§ 1404(a), the Court enter an Order transferring this Action to the U.S. District Court for the

Northern District of Georgia.

Dated: June 30, 2023                          Respectfully submitted,

*/s/ R. Leland Evans*
R. Leland Evans, Trial Attorney (0006833)
Scott A. Fenton (0068097)
DICKIE, MCCAMEY & CHILCOTE, P.C.
10 West Broad Street
Suite 1950
Columbus, OH 43215
Tel.: (614) 258-6000
Fax: (888) 811-7144

*/s/ Michael G. Bongiorno*
Michael G. Bongiorno (Admitted Pro Hac Vice)
Tamar Kaplan-Marans (Admitted Pro Hac Vice)
WILMER CUTLER PICKERING HALE AND
 DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Defendants Norfolk Southern Corporation,
Alan H. Shaw, James A. Squires and Mark R. George*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 30, 2023, I filed the foregoing **Reply Memorandum of Law in Further Support of Defendants' Motion to Transfer Venue** with the Clerk using the CM/ECF System, which will send notification of such filing to all counsel of record.

DICKIE, MCCAMEY & CHILCOTE, P.C.

By:  */s/ R. Leland Evans*
     R. Leland Evans, Esquire (0006833)

*Attorneys for Norfolk Southern Corporation, Alan H. Shaw, James A. Squires and Mark R. George*