IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BUCKS COUNTY EMPLOYEES
RETIREMENT SYSTEM,**

   **Plaintiff,**

 v.                **Civil Action 2:23-cv-982**
                 **Judge Michael H. Watson**
                 **Magistrate Judge Kimberly A. Jolson**

**NORFOLK SOUTHERN
CORPORATION, et al.,**

   **Defendants,**

**OPINION AND ORDER**

  This matter is before the Court on Defendants' Motion to Change Venue under 28 U.S.C. § 1404(a). (Doc. 23). For the following reasons, Defendants' Motion (Doc. 23) is **GRANTED**.

**I.  BACKGROUND**

  Plaintiff Bucks County Employees Retirement System ("Plaintiff"), a retirement fund out of eastern Pennsylvania, brings this action individually and on behalf of all other purchasers of Norfolk Southern Corporation common stock between October 28, 2020 and March 3, 2023. (Doc. 1 at ¶ 1). Plaintiff seeks relief under the Securities Exchange Act of 1934 against Defendant Norfolk Southern Corporation ("Norfolk Southern") and certain Norfolk Southern executives— Defendants Mark R. George ("George"), Alan H. Shaw ("Shaw"), and James A. Squires ("Squires"). (*Id.* at ¶¶ 1, 7–10). Shaw is the President and CEO of Norfolk Southern and serves on its board of directors. (*Id.* at ¶ 8). George is an Executive Vice President and the CFO of Norfolk Southern (*id.* at ¶ 10), and Squires is a former Chairman of Norfolk Southern's Board (*id.* at ¶ 9).

Norfolk Southern, an owner of major freight railroads, is a Virginia corporation with its headquarters in Atlanta, Georgia. (*Id.* at ¶ 15; Doc. 23 at 5). It operates over 19,000 route miles in twenty-two states, including Ohio. (Doc. 1 at ¶ 15). On February 3, 2023, one of Norfolk Southern's trains derailed close to the Pennsylvania–Ohio border in East Palestine, Ohio. (*Id.* at ¶ 52). And, on March 4, 2023, another Norfolk Southern train derailed in Springfield, Ohio. (*Id.* at ¶ 76).

Plaintiff says these derailments shed light on Norfolk Southern's campaign against safety regulations in the railway industry. (*See, e.g.*, *id.* at ¶ 52). Plaintiff alleges that, despite the company's assurances to the public and investors of its measures to maintain safe operations, Norfolk Southern was actively lobbying for decreased regulation in railway safety. (*See, e.g.*, *id.* at ¶¶ 37–38, 41–46).

So Plaintiff, on behalf of itself and all others similarly situated, sued Defendants in this Court, alleging they disseminated or recklessly disregarded false and misleading statements about Norfolk Southern's positions on safety. (*Id.* at ¶ 12). Later, the Denmark-based AkademikerPension and the New York-based Ironworkers Locals 40, 361 & 417 Union Annuity, Pension and Topping Out Fund each moved to be named Lead Plaintiff. (Docs. 24, 25). Plaintiff Bucks County Employees Retirement System has not asked to be Lead Plaintiff.

Now, Defendants move to transfer this case to the Northern District of Georgia. (Doc. 23). And, because Plaintiff alleges the train derailment in Springfield, Ohio shed light on Defendants' alleged misrepresentations, the Court ordered Plaintiff to show cause why this matter should not be transferred to the Western Division of the U.S. District Court for the Southern District of Ohio in Dayton, Ohio. (Doc. 27). The parties briefed both the Motion (Doc. 23) and the Order to show cause, and the question of venue is properly before the Court. (Docs. 23, 30, 36, 37, 38, 41, 42).

**II.     STANDARD**

Defendants' motion is governed by 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." The Rule "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and quotations omitted). Accordingly, a motion to transfer under § 1404(a) requires consideration of several case-specific factors. *Id.*

As a threshold matter, a court must determine "whether the action 'might have been brought' in the transferee court." *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). "An action 'might have been brought' in a transferee court, if the court has jurisdiction over the subject matter of the action, venue is proper there[,] and the defendant is amenable to process issuing out of the transferee court." *Schoenfeld v. Mercedes-Benz USA*, LLC, No. 3:20-CV-159, 2021 WL 3579016, at *1 (S.D. Ohio Aug. 13, 2021) (citing *Sky Techs. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000)).

If the action might have been brought in the transferee court, the Court then must determine whether transfer is justified for "the convenience of parties and witnesses," and "in the interest of justice[.]" 28 U.S.C. § 1404(a). In making this determination, the Court weighs both the private interests of the litigants and public interests. *See Kay*, 494 F. Supp. 2d at 849. The factors relating to private interests include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

3

*Id.* at 850 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). As for the public-interest factors, they "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013) (quoting *Piper Aircraft Co.*, 454 U.S. at 241 n.6 (internal quotation marks and brackets omitted).

### III. DISCUSSION

As explained below, the Northern District of Georgia is a proper forum for this litigation, and the great weight of relevant considerations favors transfer out of this district.

   A. *The Northern District of Georgia is a Proper Forum*

It is undisputed that this action might have been brought in the Northern District of Georgia. (Doc. 23 at 9–11; *see* Doc. 37). Any federal court has subject-matter jurisdiction over federal securities law claims. 28 U.S.C. § 1331. And the Northern District of Georgia has personal jurisdiction over all Defendants. Norfolk Southern's headquarters are in Atlanta, Georgia, and Defendants George and Shaw reside and work in Atlanta. (Hutson Declaration ¶¶ 3, 6, 8, Doc. 23 at 20–21); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). While Defendant Squires resides in New Hampshire, he regularly worked at Norfolk Southern's Atlanta headquarters until his retirement in May 2023. (Hutson Declaration ¶ 7, Doc. 23 at 21). Accordingly, the Northern District of Atlanta can exercise personal jurisdiction over him through a variety of means. *See, e.g.*, Ga. Code § 9-10-91(1) (long-arm statute permitting a court to assert jurisdiction over any defendant "as to a cause of action arising from any of the acts

4

[or] omissions" committed by him while "transact[ing] any business within this state."); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330–31 (6th Cir. 1993) (citing *Haile v. Henderson Nat'l Bank*, 657 F.2d 816 (6th Cir. 1981)) (holding that the Securities Exchange Act's nationwide service-of-process provision allows for personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States). Finally, the Northern District of Georgia is an appropriate venue for this litigation because "a substantial part of the events or omissions giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(b)(2); *see also* 15 U.S.C. § 78aa(a) (venue provision for Securities Exchange Act claims, providing for venue in "in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business[.]").

B. *Convenience of Parties and Witnesses, and the Interests of Justice, Require Transfer*

Since the Northern District of Georgia is a forum where this case originally could have been brought, the Court next weighs the private and public interests to determine whether transfer is justified. *Kay*, 494 F. Supp. 2d at 849. Defendants say the litigation should be transferred to the Northern District of Georgia because the bulk of discovery is housed in Norfolk Southern's headquarters in Atlanta and most witnesses work in Atlanta. (Doc. 23 at 11–15). Plaintiff responds that: (1) its chosen forum should be given deference, (2) several key non-party witnesses work in Columbus; and (3) there is a localized interest in Norfolk Southern's lobbying activities in Columbus. (Doc. 37 at 5–14).

In making this determination, the Court is guided by a "fundamental principle . . . that litigation should proceed in that place where the case finds its center of gravity." *Lockhart v. Garzella*, No. 3:19-CV-00405, 2020 WL 6146598, at *6 (S.D. Ohio Oct. 20, 2020) (citations omitted). As will be discussed in more detail below, that place is certainly not Columbus. Indeed, the operative facts of Plaintiff's claim seem to point everywhere else. Despite Plaintiff's claims, it is highly speculative that significant witnesses reside in Columbus. And shareholders' interest

5

in Norfolk Southern's alleged misrepresentations is no more fervent here than anywhere else in the country. Simply put, Columbus has no gravitational pull over this litigation. The balance of factors strongly justifies the transfer of this action to another forum.

    *i.*    *Plaintiff's Choice of Forum*

The Court first tackles Plaintiff's argument that the Court ought to defer to its chosen forum. (Doc. 37 at 10–11). It is true that "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)); *see also Helmer v. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*, No. 1:20-CV-105, 2020 WL 5250435, at *5 (S.D. Ohio Sept. 3, 2020) ("[a] plaintiff's choice of venue, however, holds great weight and should only be disturbed upon a significant showing that the public and private interests at stake weigh in favor of transfer."). But there are exceptions to this principle.

First, "[w]hen the plaintiff chooses a forum that is not his residence, his choice is given less weight, particularly where the operative facts took place elsewhere." *Schoenfeld*, 2021 WL 3579016, at *2 (citing *Kay*, 494 F. Supp. 2d at 850, 52). Plaintiff is based in Bucks County, Pennsylvania, and therefore does not "reside" in Columbus. Still more, Plaintiff purports to bring this action on behalf of a class of plaintiffs, which "considerably weaken[s]" the deference giving to the individual named plaintiff's choice. *Blake v. Family Dollar Stores, Inc.*, No. 2:07-CV-361, 2007 WL 1795936, at *2 (S.D. Ohio June 19, 2007). This makes sense, given that the prospective plaintiffs will have a multitude of conflicting home forums, and therefore conflicting interests in having the case heard where they consider themselves at home.

Further, Plaintiff has not asked to be the Lead Plaintiff in this action. The two parties that

6

have, AkademikerPension and the Ironworkers Locals 40, 361 & 417 Union Annuity, Pension and Topping Out Fund, reside in Denmark and New York. Neither would be at home in the present forum, and neither has taken a position on where this case should be heard.

But, most concerningly, all indications are that the case's operative facts lay elsewhere. Courts have said this "negates" any controlling deference to Plaintiff's choice of forum. *Kay*, 494 F. Supp. 2d at 852. Plaintiff maintains that evidence of Norfolk Southern's lobbying practices will support its position that Defendants acted to defraud their securities holders. And, it says, some of that lobbying is connected here, because Norfolk Southern employed a Columbus-based lobbying firm called The Success Group. (Doc. 37 at 5–6). But Norfolk Southern's lobbying in Ohio pales in comparison to its lobbying elsewhere. In particular, it invests more resources lobbying in other states, like Pennsylvania (where Plaintiff resides), New York (where one proposed Lead Plaintiff resides (*see* Doc. 25) and where another securities class action against Norfolk Southern is currently being litigated, *Ohio Carpenters Pension Fund et al v. Norfolk Southern Corporation et al*, 1:23-cv-4068 (S.D.N.Y.)), and Georgia (where Norfolk Southern is headquartered). Georgia Lobbyist Search for Norfolk Southern, GEORGIA GOVERNMENT TRANSPARENCY AND CAMPAIGN FINANCE COMMISSION, https://media.ethics.ga.gov/search/Lobbyist/Lobbyist_Groupsearchresults.aspx?&Year=2006%20and%20Newer&GroupName=&GroupNameContains=Norfolk%20Southern (follow "View Group" hyperlink for each lobbyist; then follow "View Lobbyist" hyperlink; then expand "Lobbyist Report Information"; then follow "View Report" hyperlink) (Norfolk Southern 2021 lobbying spending in Georgia over $70,000); New York Lobbying Search for Norfolk Southern, NEW YORK STATE COMMISSION ON ETHICS AND LOBBYING IN GOVERNMENT, https://reports.ethics.ny.gov/publicquery/ (select "ALL"; then search "Norfolk Southern

7

Corporation"; then follow "View Results" hyperlink; then follow "View" hyperlink under "Associated Filings" (Norfolk Southern 2021 spending in New York over $70,000); Pennsylvania Lobbying Search for Norfolk Southern Corporation, PENNSYLVANIA DEPARTMENT OF STATE, https://www.palobbyingservices.pa.gov/Public/wfSearch.aspx (select "Expenses" under "Search Type"; then search "Norfolk Southern Corporation" in "Principal Name' textbox; then follow "View" hyperlinks) (Norfolk Southern 2021 spending in Pennsylvania over $300,000); Ohio Lobbying Search for Norfolk Southern, OHIO SECRETARY OF STATE, https://www6.ohiosos.gov/ords/f?p=CFDISCLOSURE:1:::NO::P1_CANDIDATE:  (select "ALL" under "Category"; then search "Norfolk Southern"; then follow "Run Report" hyperlink) (Norfolk Southern 2021 spending on Ohio approximately $25,000).

And, these differences in spending between states themselves pale in comparison to the spending on federal lobbying in Washington D.C.  *See* Norfolk Southern Corporation 2021 1st Quarter Lobbying Report, https://lda.senate.gov/filings/public/filing/41ab1e1a-bd4e-4884-9b78-3f1b17209eeb/print/ (noting $350,000 in expenses); Norfolk Southern Corporation 2021 2nd Quarter Lobbying Report, https://lda.senate.gov/filings/public/filing/625a5f39-7fbe-4ee5-87f0-f74c4c4b242d/print/ (noting $360,000 in expenses);  Norfolk Southern Corporation 2021 3rd Quarter Lobbying Report, https://lda.senate.gov/filings/public/filing/cc275753-059a-435a-b06e-14b989e57910/print/ (noting $360,000 in expenses); Norfolk Southern Corporation 2021 4th Quarter Lobbying Report, https://lda.senate.gov/filings/public/filing/42b4bb88-0c03-4c43-b5a5-6465cbaab29d/print/ (noting $530,000 in expenses).  This tracks, given that railroad operating standards are set by federal legislation and regulation by the U.S. Department of Transportation's Federal Railroad Administration.  Plaintiff acknowledges as much in its Complaint, in which it discusses a 2015 rule requiring "trains carrying oil or other hazardous liquids to be equipped with

electronically controlled pneumatic ('ECP') brakes on their rail cars ('ECP Brake Rule')." (Doc. 1, ¶ 37). Plaintiff alleges that Norfolk Southern "retained 47 federal lobbyists to fight against the ECP Brake Rule[,]" until it was ultimately repealed in 2018. (*Id.*). Any lobbying in Ohio, or any other state, is ancillary to Norfolk Southern's federal lobbying efforts.

To the extent that the facts surrounding the derailments themselves may be relevant—which is far from clear—those also occurred elsewhere. East Palestine, Ohio is in Columbiana County, which is served by the Northern District of Ohio. Springfield, Ohio is in Clark County, which is served by this District through its Western Division at Dayton.

What is clearly operative here are the Defendants' alleged fraudulent misrepresentations to shareholders—indeed, those are the crux of the securities claim. Plaintiff says these misrepresentations include many SEC filings prepared by Norfolk Southern and an earnings call with analysts and investors. (Doc. 1, ¶¶ 39–49). The individual Defendants are purportedly responsible for these misrepresentations because each "was directly involved in the management and day-to-day operations of the Company at the highest levels . . ." and thus "involved in drafting, producing, reviewing, and disseminating the false and misleading statements being issued regarding the Company[.]" (*Id.*, ¶ 12). The day-to-day operations of Norfolk Southern were centered at its headquarters, in Atlanta. And the individual Defendants all worked there during the relevant period. So, the flow of information from the Defendants to its shareholders stems from Atlanta, and the facts most likely to be operative to the fraudulent misrepresentations must lay there too. *See Teamsters Local 237 Welfare Fund v. ServiceMaster Global Holdings, Inc.*, Case No. 3:20-cv-00457, 2020 WL 4368283, at *5 (M.D. Tenn. July 30, 2020) (finding that although misrepresentations allegedly made by defendants regarding their business may have been transmitted nationwide, the course of conduct giving rise to those misrepresentations took place at

corporate headquarters, forming the center of gravity of the case).

To be sure, Defendants' purported lobbying efforts to undermine safety regulations are also relevant. Details about those efforts might make the fraudulent nature of Defendants' representations about safety more or less likely. But that strategy too is likely to emanate from Norfolk Southern's headquarters. If Norfolk Southern had a corporate anti-safety-regulation strategy, which it employed through lobbyists across the country, then Atlanta—where the alleged strategy was developed—remains the center of gravity. True, it may have had several orbiting satellites in the places that strategy was employed. But that still leaves Columbus—where only a handful of lobbyists were employed, at a relatively low expenditure—as a particularly small satellite.

For all these reasons, Plaintiff's choice of forum is owed little deference.

  ii.   *Convenience of Parties and Witnesses and Accessibility of Evidence*

Other relevant private-interest factors here include the convenience of the parties and witnesses and the accessibility of the evidence. *See Flatt v. Aspen Dental Mgmt., Inc.*, No. 2:18-CV1278, 2019 WL 6044159, at *2 (S.D. Ohio Nov. 15, 2019) (citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (listing several possible private-interest considerations). First, none of the parties' burdens in litigating this matter are lessened by the case remaining in the Southern District of Ohio. In fact, it is a seemingly inconvenient forum for Plaintiff, a business entity based out of Pennsylvania. It would be similarly inconvenient for each of the proposed Lead Plaintiffs, one from Denmark and the other from New York. Norfolk Southern, because it operates routes throughout Ohio, is no stranger to litigation before this Court. So its burden in litigating here now is not particularly high. But still, Defendants' burden is certainly lessened if the case is moved to the Northern District of Georgia, where Norfolk Southern is headquartered and where Shaw,

Squires, and George currently reside and work, or formerly worked. (Doc. 23 at 20–21). Without any countervailing convenience considerations for Plaintiff or the proposed Lead Plaintiffs, the overall convenience of the parties thus favors of transfer.

So too does the convenience of witnesses. Plaintiff says it intends to depose witnesses from a Columbus-based lobbying group, The Success Group, to testify as to what Norfolk Southern told them to lobby for and against. (Doc. 30 at 3). Plaintiff says "that at least six important Success Group witnesses reside or work in Columbus (namely, Dan McCarthy, McKenzie Davis, Anthony Aquillo, Michael Toman, Robert Van Kirk, and The Success Group legal entity)." *Id.* It is possible some witnesses from The Success Group may provide testimony to the case—just as any Norfolk Southern lobbyists across the country might. But it is more probable, indeed absolute, that witnesses in Atlanta at the Norfolk Southern headquarters would provide pertinent testimony about Norfolk Southern's alleged corporate strategy against safety regulations and misrepresentations to the public and investors. So, on balance, the Northern District of Georgia is a more convenient forum for witnesses.

While Plaintiff contends that the location of documents relevant to the litigation should not be heavily considered because discovery is often exchanged electronically (*see* Doc. 37 at 8), it is still the case that the most apparently significant discovery will be collected in Atlanta. So, in sum, the relevant private-interest factors weigh in favor of transfer.

    *iii.*    *Localized Interest*

Public interest factors include "the local interest in having localized controversies decided at home." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 62. Plaintiff says that Columbus media coverage of Norfolk Southern's political spending in the wake of the derailments demonstrates a significant localized interest in the litigation. (Doc. 37 at 12). But this interest was not unique to

11

Columbus. Rather, the train derailments generated national media attention about railway safety and Norfolk Southern's political spending. *See, e.g.*, Justin Sweitzer, *Norfolk Southern has spent millions on lobbying and political donations. Will it pay off?*, CITY & STATE PENNSYLVANIA, (Apr. 3, 2023), https://www.cityandstatepa.com/politics/2023/04/norfolk-southern-has-spent-millions-lobbying-and-political-donations-will-it-pay/384762/; Reid Frazier, *After Workers Report Health Problems, OSHA Investigates Norfolk Southern for East Palestine Cleanup Site*, THE ALLEGHENY FRONT (March 9, 2023), https://www.alleghenyfront.org/after-workers-report-health-problems-osha-investigates-norfolk-southern-for-east-palestine-cleanup-site/; *Tempers Flare as East Palestine Residents Confront Railroad Officials and EPA: "Don't Lie to Us"*, CBS NEWS (March 3, 2023, 6:07 AM), https://www.cbsnews.com/news/east-palestine-derailment-tempers-flare-residents-confront-railroad-officials-epa/; Julia Shapero, *Timeline of the Ohio Train Derailment Response: From EPA's Initial Response to Buttigieg Visit*, THE HILL (February 25, 2023, 10:40 PM), https://thehill.com/policy/energy-environment/3874339-timeline-of-the-ohio-train-derailment-response-from-epas-initial-response-to-buttigieg-visit/; Topher Sanders and Dan Schwartz, *A Norfolk Southern Policy Lets Officials Order Crews to Ignore Safety Alerts*, PROPUBLICA (February 22, 2023, 9:47 PM), https://www.propublica.org/article/norfolk-southern-policy-safety-alerts-east-palestine-derailment; Joe Hernandez, *The EPA Steps in to Take Over the East Palestine Train Derailment Cleanup*, NPR (February 21, 2023, 9:12 PM), https://www.npr.org/2023/02/21/1158532207/epa-east-palestine-train-derailment; Prem Thakker, *Norfolk Southern Has Thrown Roughly $100 Million Into Politics Since 1990*, THE NEW REPUBLIC (Feb. 20, 2023, 1:07 PM), https://newrepublic.com/post/170675/norfolk-southern-spent-roughly-100-million-politics-since-1990; Becky Sullivan, *What to Know About the Train Derailment in East Palestine, Ohio*, NPR (February 16, 2023, 1:04 PM),

https://www.npr.org/2023/02/16/1157333630/east-palestine-ohio-train-derailment; Rebekah Riess, Hannah Sarisohn, and Christina Maxouris, *Train Derailment in Northeastern Ohio Sparks Massive Fire*, CNN (February 4, 2023, 10:17 PM), https://www.cnn.com/2023/02/04/us/east-palestine-ohio-train-derailment-fire/index.html.  The issues of this case are not those of a single, local interest.  And even if one considers the local interest generated by the derailments themselves, the Court notes again that those occurred in East Palestine (served by the Northern District of Ohio) and Springfield (served by the Southern District of Ohio's Western Division at Dayton).

More importantly, it is worth remembering that this is a securities fraud action, not an action meant to vindicate the physical, emotional, and environmental damage the derailments brought upon Ohio and Ohioans.  Instead, the questions here are of a company's duties to its shareholders, who themselves are dispersed across this country and the world.  So, this factor is largely neutral in favoring any forum, but if anything should also tip toward where the company resides.  *Butorin on behalf of KBR Inc. v. Blount*, 105 F. Supp. 3d 833, 843 (S.D. Tex. 2015) (finding that in securities derivative action involving "stockholders from many different places," the local interest factor should weigh "slightly" in favor of where the company was headquartered); *S.E.C. v. Roberts*, No. 07-407 (EGS), 2007 WL 2007504, at *5 (D.D.C July 10, 2007) (civil enforcement action under Securities Exchange Act brought against former in-house attorney at technology company transferred to Northern California, where the company was headquartered and there was "clearly more of a local controversy"); *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1317 (E.D. Penn. 1982) (transferring securities action to where Defendant corporation was headquartered, noting that the "transfer of this case should allow for resolution in a local forum of matter which appear to have occurred largely in Texas.").

* * *

At base, the Court has been presented with only two options: Keep the case in Columbus or transfer it to Atlanta. Notably, Plaintiff stuck by its original choice of forum, and suggested no meaningful alternative while litigating this Motion. Though this litigation might also thrive elsewhere, the Court declines to consider *sua sponte* transfer, given that Defendants have suggested an appropriate forum under § 1404(a).

Faced with the two proposed forums, the choice is simple. Atlanta is the nexus of the alleged activity challenged by Plaintiff: a simultaneous campaign of covert anti-safety-regulation strategy and public-facing safety messaging to shareholders. Atlanta thus holds the center of gravity for this case and provides for the accessibility of evidence, as well as a convenient forum for parties and witnesses. Columbus exerts no countervailing pull.

## IV.   CONCLUSION

Defendants' Motion (Doc. 23) is **GRANTED**. The Clerk of Courts is hereby **DIRECTED TO TRANSFER** this case to the United States District Court for the Northern District of Georgia. IT IS SO ORDERED.

Date:   September 15, 2023

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE