**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| BUCKS COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> NORFOLK SOUTHERN CORPORATION, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. 1:23-cv-04175-SDG

<u>CLASS ACTION</u>

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**REQUEST FOR JUDICIAL NOTICE**
**AND**
**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**
**IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

4863-1843-7338.v2

# TABLE OF CONTENTS

**Page**

I.    LEGAL STANDARD ..................................................................................1

II.   PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST ......................2

III.  PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE ...................................4

    A.    Plaintiffs' Exhibit A ........................................................................5

    B.    Plaintiffs' Exhibit B........................................................................7

    C.    Plaintiffs' Exhibit C......................................................................12

IV.   CONCLUSION.......................................................................................13

4863-1843-7338.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Baker v. City of Madison, Ala.*,
   67 F.4th 1268 (11th Cir. 2023) ....................................................................1, 2

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) ..................................................................2, 3, 4

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) .........................................................................2

*In re Paincare Holdings Sec. Litig.*,
   541 F. Supp. 2d 1283 (M.D. Fla. 2008)...............................................................1

*Lamonte v. City of Hampton, Ga.*,
   576 F. Supp. 3d 1314 (N.D. Ga. 2021)................................................................6

*Maxcess, Inc. v. Lucent Techs., Inc.*,
   433 F.3d 1337 (11th Cir. 2005) .........................................................................6

*McCone v. Thorpe*,
   828 F. App'x 697 (11th Cir. 2020) ..............................................................6, 12

*McGuire v. Marshall*,
   50 F.4th 986 (11th Cir. 2022) ..........................................................................12

*Mobility Workx, LLC v. Unified Patents, LLC*,
   15 F.4th 1146 (Fed. Cir. 2021) ....................................................................6, 12

*United States ex rel. Osheroff v. Humana Inc.*,
   776 F.3d 805 (11th Cir. 2015) .........................................................................13

*Ward-Richardson v. FCA US LLC*,
   690 F. Supp. 3d 1372 (N.D. Ga. 2023)..........................................................6, 12

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012) .........................................................................6

4863-1843-7338.v2

**Page**

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 12(d) ...............................................................................................................2

Federal Rules of Evidence
   Rule 201(b) .............................................................................................................2

4863-1843-7338.v2

Lead Plaintiffs Ironworkers Locals 40, 361 & 417 Union Annuity, Pension and Topping Out Funds and Akademikernes Pensionskasse (together, "Plaintiffs") respectfully submit this response to Defendants' Request for Judicial Notice in Support of Motion to Dismiss the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 99-17) ("Defs.' RJN" or "Request"). Plaintiffs further request that in support of their concurrently filed Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Complaint (the "Opposition"), the Court take judicial notice of Exhibits A-C referenced herein, and attached to the Declaration of Jason C. Davis in Support of Plaintiffs' Response to Defendants' Request for Judicial Notice and Plaintiffs' Request for Judicial Notice in Support of Their Opposition to Defendants' Motion to Dismiss the Consolidated Complaint, also filed concurrently herewith.[1]

## I. LEGAL STANDARD

There are only two exceptions to the general rule that, when ruling on a motion to dismiss, a court must limit its consideration to the pleadings and attached exhibits, or else the motion is converted to one for summary judgment: "(1) the incorporation-by-reference doctrine and (2) judicial notice." *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023); *In re Paincare Holdings Sec. Litig.*, 541 F. Supp.

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as set forth in the Opposition. Additionally, unless otherwise noted, all emphasis is added and internal citations are omitted.

2d 1283, 1288 (M.D. Fla. 2008) ("general rule mandates a court limit its inquiry to the four corners of the complaint"); *see also* Fed. R. Civ. P. 12(d).

**First**, under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss "if (1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed." *Baker*, 67 F.4th at 1276. "Undisputed," in this context, "means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). **Second**, a court may take judicial notice of facts that are "not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); Fed. R. Evid. 201(b). Public records are among the permissible facts that a district court may consider, and thus, may be judicially noticed "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents." *Avado*, 187 F.3d at 1278.

## II.   PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST

Defendants have submitted 14 exhibits (ECF 99-3 to 99-16) for the Court's consideration with their Motion – ten of which they assert were incorporated by reference into the Complaint and all of which they argue may be judicially noticed. *See generally* ECF 99-2, 99-17. To the extent that Defendants seek judicial notice of

- 2 -

their exhibits, they may be considered for the purposes that the documents contain certain statements, but they may not be used to prove that those statements were true. *Avado*, 187 F.3d at 1278.

For example, Defendants' Exhibit 4 (ECF 99-6) is a copy of the July 8, 2022 Federal Railroad Administration's Audit Report ("FRA Audit Report"), which they submit to establish – despite the numerous violations of federal regulations described in the FRA Audit Report following a system-wide audit of Norfolk – that a single, vague statement that Norfolk's safety programs were "'largely effective'" was true. MTD at 29 (ECF 99-6 at 4). But that truth is belied by the enumeration of safety issues Norfolk was told to address set forth elsewhere in the same document. In fact, the very next statements in the FRA Audit Report – following the sentence Defendants quote to support their arguments that they were unaware of the falsity of the challenged statements – conclude:

> Still, [Norfolk] has ***many opportunities to improve employee and manager awareness of and compliance with both FRA safety regulations and [Norfolk] safety programs***. With more effective use of training, improved management oversight, or even innovative applications of technology, [Norfolk] can ***better prevent property damage, loss of life, or catastrophic damage to communities*** by ensuring its personnel have all of the knowledge and tools they need to maximize railroad safety.

ECF 99-6 at 42.

Likewise, seeking to undermine the strong inference of scienter for Norfolk's hazmat manager, Scott Deutsch, MTD at 36-37, Defendants submit Exhibit 3 (ECF

- 3 -

4863-1843-7338.v2

99-5), a transcript of the February 6, 2023 press conference held by Governor Mike DeWine to explain the evacuation order.  By concocting an interpretation premised on the idea that Deutsch was merely speaking in hypotheticals – despite the dire context of an evacuation order then being issued – Defendants contend that Deutsch was unaware that he was misrepresenting the circumstances culminating in the Detonation and evacuation.  MTD at 36-37.  But Defendants' Exhibit 3 cannot be used to assert any so-called "truth" that Deutsch was unaware that his answers to Governor DeWine, even if framed in the conditional tense, misrepresented the information Deutsch, Shaw, and the rest of the Norfolk team had at that time, which indicated the cars had not "react[ed]," could not "react on their own again," and could not "continue to polymerize."  *See* Complaint, ¶¶450-451.

Accordingly, to the extent Defendants' exhibits are submitted to establish the "truth of the documents' contents," as opposed to "determining what statements the documents contain," their Request is improper and should be denied.  *Avado*, 187 F.3d at 1278.

## III.    PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

On June 25, 2024, after Plaintiffs filed the Complaint, the NTSB published the final results of its investigation into the derailment of Train 32N operated by Norfolk on February 3, 2023 in East Palestine, Ohio and held a public board meeting to discuss its findings.  Plaintiffs request the Court take judicial notice of three

documents reporting the NTSB's findings.  Specifically, Plaintiffs request that the Court take judicial notice that the NTSB's final report (PEx. A), the closing remarks by The Honorable Jennifer Homendy, Chair of the NTSB, at the board meeting presenting the investigation's conclusions (PEx. B), and a newspaper article reflecting press coverage of the NTSB public board meeting (PEx. C), contained the statements identified herein.

### A.    Plaintiffs' Exhibit A

Plaintiffs' Exhibit A is a copy of the NTSB's final Railroad Investigation Report, RIR-24-05, titled: "Norfolk Southern Railway Derailment and Hazardous Materials Release," published on June 25, 2024, and available at https://www.ntsb.gov/investigations/AccidentReports/Reports/RIR2405%20 CORRECTED.pdf.

Exhibit A contains the following statement:

> On-scene temperature trends did not indicate that a polymerization reaction was occurring and postaccident examinations confirmed this. The vent and burn procedure was **not necessary** to prevent a polymerization-induced explosion. . . . NS and its contractors continued to describe polymerization as an imminent threat when expert opinions and available evidence **should have led them to reconsider their course of action.  NS compromised the integrity of the decision to vent and burn the tank cars by not communicating expertise and dissenting opinions to the incident commander making the final decision.  This failure to communicate completely and accurately with the incident commander was unjustified**.

PEx. A at xi-xii.

4863-1843-7338.v2

Exhibit A is the culmination of the preliminary NTSB report and the NTSB investigation quoted and cited throughout the Complaint, making it central to the Complaint's allegations, and, therefore, appropriate for consideration under the incorporation-by-reference doctrine. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (although a purchase agreement was "not mentioned in, nor attached to" the complaint, it was central to plaintiff's claim and properly considered when ruling on a motion to dismiss).

Moreover, Exhibit A is proper for judicial notice because it is a public record accessible from an official government website. *McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020) ("[a] district court may take judicial notice of public records" when considering a motion to dismiss); *Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1151 (Fed. Cir. 2021) (taking judicial notice of "government documents" including those "published in the Federal Register or on the USPTO's website" and a "report from the Congressional Research Service"); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) ("[t]he contents of an administrative agency's publicly available files, after all, traditionally qualify for judicial notice"); *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1375 n.2 (N.D. Ga. 2023) (taking judicial notice of report and letters accessible from National Highway Traffic Safety Administration website); *Lamonte v. City of Hampton, Ga.*, 576 F. Supp. 3d 1314, 1327 n.12 (N.D. Ga. 2021) (same); *see also*

- 6 -

Defs.' RJN at 7 (arguing that courts may take judicial notice of publicly available documents accessible from an official government website).

## B.      Plaintiffs' Exhibit B

Plaintiffs' Exhibit B is a copy of the "Closing Remarks: On the Investigation into the Norfolk Southern Railway Derailment and Hazardous Materials Release," given by The Honorable Jennifer Homendy, Chair, at the NTSB's public board meeting, held on June 25, 2024, and available at https://www.ntsb.gov/Advocacy/ Activities/Pages/Homendy20240625B.aspx.

Exhibit B contains the following statements:

> We collect the evidence, evaluate the facts, and develop lessons learned with one goal in mind: to prevent the next train derailment and hazardous materials release.
>
> ***Which is why I'm so deeply troubled with how Norfolk Southern approached this investigation***.
>
> When we conduct an investigation, we work under what we call "the party system," meaning we bring together technical experts from those involved in a train derailment to help us gather and develop the facts around the investigation.
>
> They are not part of the analysis or development of the findings, probable causes, or safety recommendations, but they are critical to helping us obtain information that we need to carry out our safety mission.
>
> At the same time, parties get access to what we are finding in real-time over the course of our investigation, so they don't have to wait until the conclusion to make [a] safety change.

- 7 -

4863-1843-7338.v2

Norfolk Southern was one of the parties to this investigation. There are regulations governing the conduct of parties, and rules the parties agree to in writing.

***Numerous times, Norfolk Southern delayed or failed to provide critical investigative information to our team***.

Twice, at the request of staff, I called Norfolk Southern stating I would issue subpoenas to get the information if it wasn't immediately provided to our team.

For example, in interviews with our team, SPSI – Norfolk Southern's contractor – ***maintained that they did not take or keep written records on trending tank car temperatures***.

However, in later interviews with their employees, ***we found that they did keep those records . . . there were text messages between Norfolk Southern*** and SPSI employees.

It took about ***two months*** before our team received those communications – two months before those communications were provided to our team.

As stated in the report we just adopted, our Investigator-In-Charge told Norfolk Southern ***on February 3rd to preserve all evidence for the investigation***.

***Over the next two weeks, he requested five times the full download of locomotive event and image recorders***.

On February 16th, we were informed by Norfolk Southern that ***all but about 20 minutes was erased*** "because the locomotives were returned to service."

***The day before the investigative hearing last June, Norfolk Southern retained, without our knowledge***, the services of a private company to test commercially purchased vinyl chloride – ***not*** vinyl chloride from the five tank cars that derailed, but vinyl chloride that they purchased ***off the shelf***. Then, instead of using their investigation for their own purposes, ***they submitted it for inclusion in the NTSB record***.

- 8 -

4863-1843-7338.v2

Not only did these actions violate our party agreement, but they violated the regulations governing our evidence collection, which state:

*NTSB has exclusive authority to decide timing, manner and method of testing and examination of evidence, and extraction of data.*

Further, under our regulations:

*Only the Board has the authority to decide on the way in which testing under this section will be conducted, including decisions on the person that will conduct the test, the type of test that will be conducted, and any individual who will witness the test. Those decisions are committed to the discretion of the Board.*

Party rules and our regulations are in place to preserve our agency's independence and the integrity of our investigations.

***Norfolk Southern tried to submit their own investigation under the guise of a party submission, not once, not twice, not three times, but four times.***

The investigator-in-charge reminded them numerous times that, under our regulations, parties "may submit to the NTSB written proposed findings to be drawn from the evidence produced during the course of the investigation."

Evidence produced during the course of the investigation.

In other words, parties are afforded the privilege – not the right – to develop proposed findings from the evidence of our investigation. Parties are not permitted to ***manufacture their own evidence*** and develop their own set of facts outside the NTSB investigative process, ***which is exactly what Norfolk Southern did***.

***Recall, the evidence was derived not from the accident scene, but from commercially purchased products***.

Our investigator-in-charge rejected the party submission containing Norfolk Southern's extraneous testing not once, but twice. Norfolk Southern then went to our General Counsel and appealed, who promptly and appropriately informed them the investigator-in-charge has the final say.

- 9 -

4863-1843-7338.v2

In fact, our regulations state the investigator-in-charge "organizes, conducts, controls, and manages the investigation" and "has the responsibility and authority to supervise and coordinate all resources and activities of all personnel, both Board and non-Board" involved in the investigation.

Norfolk Southern knows this.

Norfolk Southern then went around the investigator-in-charge and our general counsel and sent the material directly to the Board Members – five presidentially-appointed, Senate confirmed government officials – via email on May 1st, urging us to overrule our investigator-in-charge and "direct" staff to include in our public docket Norfolk Southern's party submission, which, they'd been told repeatedly violated our regulations.

This demonstrated ***complete disregard for the conduct of our independent investigation***.

***In speaking with the investigative and legal teams, Norfolk Southern's abuse of the party process was reprehensible***.

Two weeks ago, Norfolk Southern visited each of us. It is a normal part of the process, where parties are afforded the opportunity to meet with Board Members before a final Board meeting.

In their meeting with me, with NTSB staff from the Offices of Railroads, Pipelines, and Hazardous Materials Investigations, General Counsel, and Safety Recommendations and Communications, one of Norfolk Southern's senior executives stated that it was their hope that – in this Board meeting and the community meetings – the NTSB would put to rest the "rumor" that Norfolk Southern made the decision to vent and burn to move trains.

That is not only unethical and inappropriate, but defending an entity's decision-making is not our role.

Norfolk Southern's senior executive went on to say that there's a "real interest" on the part of the Department of Justice and the Administration to move on – something I've never heard once from the Department of Justice or the Administration.

- 10 -

4863-1843-7338.v2

Norfolk Southern then stated that this is an opportunity to close a chapter and allow the community and the railroad to move on.

The entire exchange ended with what-*everyone from the NTSB heard in the room was a threat* – and it was delivered that way – to use every avenue and opportunity to vigorously defend their decision-making in media and hearings going forward.

That is your right.   But it's not our role to defend Norfolk Southern; we're here to protect the American people and the traveling public.   Our entire mission centers around learning from the past and building a better, safer future for all.

A few days ago, Norfolk Southern invited Board members to visit key areas near the derailment site as well as their new Digital Train Inspection portal in Leetonia, Ohio.

While site visits are wonderful educational opportunities, timing matters a great deal.

As Federal officials, we must observe, among other standards, principles of ethical conduct.   We must always perform our duties impartially and never create even an appearance of impropriety.

I believe this invitation . . . to visit Norfolk Southern the day before the Board meeting . . . would've indeed given the appearance of impropriety and, therefore, would've constituted a violation of our ethics standards.

I struggled a lot with whether I wanted to share all this detail with the public as I don't want it to overshadow our findings, probable cause, or safety recommendations that were issued today.

***But Norfolk Southern's actions were unconscionable***.   I want everyone who works with the NTSB – on current and future investigations – to understand this: we are impervious to anything but the truth.

PEx. B at 1-3.

- 11 -

4863-1843-7338.v2

Exhibit B may be judicially noticed for the fact that the statements contained therein are matters of public record available on a government website. *McCone*, 828 F. App'x at 698; *Ward-Richardson*, 690 F. Supp. 3d at 1375 n.2; *McGuire v. Marshall*, 50 F.4th 986, 1000 n.20 (11th Cir. 2022); *Mobility Workx*, 15 F.4th at 1151; *see also* Defs.' RJN at 6-7 (arguing that courts may take judicial notice of public press conferences and documents accessible from an official government website).

### C.    Plaintiffs' Exhibit C

Plaintiffs' Exhibit C is an article titled: "'Norfolk Southern's actions were unconscionable': NTSB gives final East Palestine report," published in the *Akron Beacon Journal* on June 25, 2024, and available at https://www.beaconjournal.com/story/news/2024/06/25/ntsb-east-palestine-meeting-finals-results-train-derailment-safety/74195250007/.

Exhibits C contains the following statements:

> 2:50 p.m: As people in Ohio and Pennsylvania evacuated for the vent and burn, many fearing for their lives and safety, Homendy said internal communication records show some Norfolk Southern employees had a different reaction. When someone sent a pilot's picture of ***the vent and burn plume rising through a cloud layer, Scott Deutsch, the regional manager of Norfolk Southern's hazardous materials, wrote "cool,"*** she said. "Does anyone think that statements made about skin burns and grave danger of death is cool," Homendy asked. Another employee used the same word to describe video taken of the vent and burn detonation, she said. "It's not cool," Homendy said.

PEx. C at 2-3.

- 12 -

Exhibit C is appropriate for judicial notice for the purpose of determining that the statements were reported in the article. *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("courts may take judicial notice of documents such as the newspaper articles at issue here for the limited purpose of determining which statements the documents contain").

## IV.    CONCLUSION

To the extent that Defendants seek judicial notice of Exhibits 1-14 in support of their Motion to contend that the statements made therein are true, the Court should deny Defendants' Request. Plaintiffs furthermore respectfully request that the Court take judicial notice of Plaintiffs' Exhibits A-C for the limited purpose that the statements contained therein were made.

DATED:  August 23, 2024        Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
JASON C. DAVIS (CA 253370)
(admitted *pro hac vice*)


                  s/ Jason C. Davis
                  JASON C. DAVIS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com

- 13 -

4863-1843-7338.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
ASHLEY M. PRICE (CA 281797)
(admitted *pro hac vice*)
JACK ABBEY GEPHART (CA 345398)
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
aprice@rgrdlaw.com
jgephart@rgrdlaw.com

*Counsel for Co-Lead Plaintiff the Ironworkers*
*Funds and Co-Lead Counsel for the Class*

HERMAN JONES LLP
JOHN C. HERMAN
(Georgia Bar No. 348370)
3424 Peachtree Road NE, Suite 1650
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)
jherman@hermanjones.com

*Counsel for Co-Lead Plaintiff the Ironworkers*
*Funds and Co-Liaison Counsel*

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY (OH 0063373)
(admitted *pro hac vice*)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

*Counsel for Bucks County Employees Retirement*
*System and the Ironworkers Funds*

- 14 -

4863-1843-7338.v2

KESSLER TOPAZ MELTZER
  & CHECK, LLP
JOHNSTON DE F. WHITMAN, JR. (PA207914)
(admitted *pro hac vice*)
NATHAN A. HASIUK (PA314644)
(admitted *pro hac vice*)
AUSTIN W. MANNING (PA327640)
(*pro hac vice* pending)
VANESSA M. MILAN (PA329312)
(admitted *pro hac vice*)
DYLAN J. ISENBERG (PA333996)
(admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
jwhitman@ktmc.com
nhasiuk@ktmc.com
amanning@ktmc.com
vmilan@ktmc.com
disenberg@ktmc.com

*Counsel for Co-Lead Plaintiff Akademikernes
Pensionkasse and Co-Lead Counsel for the Class*

CAPLAN COBB LLC
MICHAEL A. CAPLAN
(Georgia Bar No. 601039)
CAMERON B. ROBERTS
(Georgia Bar No. 599839)
75 Fourteenth Street, NE, Suite 2700
Atlanta, GA  30309
Telephone:  404/596-5600
404/596-5604 (fax)
mcaplan@caplancobb.com
croberts@caplancobb.com

*Counsel for Co-Lead Plaintiff Akademikernes
Pensionkasse and Co-Liaison Counsel*

- 15 -

4863-1843-7338.v2

## **RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

The undersigned counsel certifies that this document has been prepared in accordance with the font and type specifications required under Northern District of Georgia Local Rules 5.1 and 7.1.

*/s/ Jason C. Davis*
JASON C. DAVIS

- 16 -

4863-1843-7338.v2