## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

BUCKS COUNTY EMPLOYEES
RETIREMENT SYSTEM, on Behalf of
Itself and All Others Similarly Situated,

      Plaintiff,

       v.

NORFOLK SOUTHERN
CORPORATION, JAMES A. SQUIRES,
ALAN H. SHAW, and CYNTHIA M.
SANBORN,

      Defendants.

Civil Action No. 1:23-CV-04175-SDG

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................1

I.      Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10b-5 .............2

        A.      The Complaint Does Not Adequately Allege Any False or
                Misleading Statement Relating to Safety..............................................2

                1.      The Safety Statements Are Nonactionable Puffery ....................2

                2.      The Opposition Fails to Identify Any Material Omissions
                        Related to the Safety Statements ................................................8

                3.      Certain of the Safety Statements Are Nonactionable
                        Opinions ......................................................................................9

        B.      The Complaint Does Not Adequately Allege an Actionable
                Misstatement Related to the Vent and Burn.......................................10

                1.      Plaintiffs Lack Standing to Challenge Vent and Burn
                        Statements .................................................................................10

                2.      The Complaint Does Not Adequately Allege Conduit
                        Liability.....................................................................................12

                3.      The Complaint Does Not Adequately Allege Falsity With
                        Regard to Deutsch's Vent and Burn Statements .......................13

                4.      The Complaint Does Not Adequately Allege an Actionable
                        Omission Related to the Vent and Burn....................................14

        C.      The Complaint Does Not Adequately Allege Scienter........................14

                1.      No Scienter With Regard to the Safety Statements ..................14

                2.      No Scienter With Regard to Vent and Burn Statements ...........21

        D.      The Complaint Does Not Adequately Allege Scheme Liability .........23

        E.      The Complaint Does Not Adequately Allege Loss Causation
                With Regard to the Vent and Burn Statements...................................24

II.    Plaintiffs Have Not Adequately Alleged a Section 20(a) Claim ....................25

CONCLUSION ................................................................................................................25

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Abato v. Marcam Corp.*,
162 F.R.D. 8 (D. Mass. 1995) ...............................................................11

*Allegheny County Employees' Retirement System v. Energy Transfer
LP*, 532 F. Supp. 3d 189 (E.D. Pa. 2021) .......................................16

*Bacon v. Stiefel Laboratories, Inc.*,
714 F. Supp. 2d 1186 (S.D. Fla. 2010) ...........................................12

*Baker v. City of Madison, Alabama*,
67 F.4th 1268 (11th Cir. 2023) .........................................................16

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v.
Transocean Ltd.*, 866 F. Supp. 2d 223 (S.D.N.Y. 2012)................................8

*Buhrke Family Revocable Trust v. U.S. Bancorp*,
2024 WL 1330047 (S.D.N.Y. Mar. 28, 2024)..................................................5

*Carpenters Health & Welfare Fund of Philadelphia v. Coca-Cola Co.*,
2002 WL 34089163 (N.D. Ga. Aug. 20, 2002)......................................13, 18

*Carvelli v. Ocwen Financial Corp.*,
934 F.3d 1307 (11th Cir. 2019) ........................................................2

*City of Pontiac General Employees Retirement System v. Schweitzer-
Mauduit International, Inc.*,
806 F. Supp. 2d 1267 (N.D. Ga. 2011)..........................................................20

*City of Sunrise General Employees' Retirement Plan v. Fleetcor
Technologies, Inc.*,
2018 WL 4293143 (N.D. Ga. May 15, 2018) ...............................................20

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP
Morgan Chase, Co.*, 553 F.3d 187 (2d Cir. 2009) ....................................3, 4

*FindWhat Investor Group v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) .......................................................9, 14, 24

*Freudenberg v. E\*Trade Financial Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ..........................................................21

*Gnanaraj v. Lilium N.V.*,
  2024 WL 3916758 (S.D. Fla. Aug. 23, 2024) ...............................................23

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT*
  *Corp.*, 660 F. App'x 850 (11th Cir. 2016).....................................................23

*In re Centerline Holding Co. Securities Litigation*,
  380 F. App'x 91 (2d Cir. 2010) ......................................................................22

*In re ChoicePoint, Inc. Securities Litigation*,
  2006 WL 8429145 (N.D. Ga. Nov. 21, 2006).................................................7

*In re Countrywide Financial Corp. Derivative Litigation*,
  554 F. Supp. 2d 1044 (C.D. Cal. 2008)....................................................20, 21

*In re Equifax Inc. Securities Litigation*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019).....................................................*passim*

*In re Flowers Foods, Inc. Securities Litigation*,
  2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) ..........................................18, 19

*In re Galectin Therapeutics, Inc. Securities Litigation*,
  157 F. Supp. 3d 1230 (N.D. Ga. 2015)...........................................................23

*In re HD Supply Holdings, Inc. Securities Litigation*,
  341 F. Supp. 3d 1342 (N.D. Ga. 2018)...........................................................17

*In re Immucor, Inc. Securities Litigation*,
  2011 WL 2619092 (N.D. Ga. June 30, 2011) ..................................................6

*In re Internap Network Services Corp. Securities Litigation*,
  2012 WL 12878579 (N.D. Ga. Aug. 23, 2012)...............................................12

*In re Massey Energy Co. Securities Litigation*,
  883 F. Supp. 2d 597 (S.D.W. Va. 2012) ..........................................................5

*In re MiMedx Group, Inc. Securities Litigation*,
  2021 WL 7210372 (N.D. Ga. Mar. 25, 2021) ................................................25

*In re Netbank, Inc. Securities Litigation*,
2009 WL 2432359 (N.D. Ga. Jan. 29, 2009) ..................................................15

*In re Norfolk Southern Corp. Bond/Note Securities Litigation*,
2024 WL 3579096 (S.D.N.Y. July 26, 2024)...............................................3, 4

*In re Omega Healthcare Investors, Inc. Securities Litigation*,
563 F. Supp. 3d 259 (S.D.N.Y. 2021) .............................................................8

*In re Omnicom Group, Inc. Securities Litigation*,
597 F.3d 501 (2d Cir. 2010) ..........................................................................25

*In re Philip Morris International Inc. Securities Litigation*,
89 F.4th 408 (2d Cir. 2023) ...........................................................................10

*In re Retek Inc. Securities Litigation*,
2007 WL 14352 (D. Minn. Jan. 3, 2007) .......................................................13

*In re Spectrum Brands, Inc. Securities Litigation*,
461 F. Supp. 2d 1297 (N.D. Ga. 2006)...........................................................15

*In re St. Jude Medical, Inc. Securities Litigation*,
836 F. Supp. 2d 878 (D. Minn. 2011) ..............................................................5

*In re Tupperware Brands Corp. Securities Litigation*,
2021 WL 247870 (M.D. Fla. Jan. 25, 2021) ..................................................22

*In re Tupperware Brands Corp. Securities Litigation*,
2023 WL 5091802 (11th Cir. Aug. 8, 2023)..................................................22

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
625 F. Supp. 3d 164 (S.D.N.Y. 2022) ...........................................................16

*In re Vale S.A. Securities Litigation*,
2020 WL 2610979 (E.D.N.Y. May 20, 2020)..................................................6

*In re ValuJet, Inc.*,
984 F. Supp. 1472 (N.D. Ga. 1997).............................................................7, 19

*Licht v. Watson*,
567 F. App'x 689 (11th Cir. 2014)..................................................................11

*Lomingkit v. Apollo Educational Group Inc.*,
  275 F. Supp. 3d 1139 (D. Ariz. 2017) .............................................................5

*Lopez v. Ctpartners Executive Search Inc.*,
  173 F. Supp. 3d 12 (S.D.N.Y. 2016) ...............................................................5

*Lorenzo v. SEC*,
  587 U.S. 71 (2019).........................................................................................23

*Luczak v. National Beverage Corp.*,
  812 F. App'x 915 (11th Cir. 2020)................................................................21

*Maverick Fund, Ltd. v. Mohawk Industries, Inc.*,
  2023 WL 2887603 (N.D. Ga. Mar. 31, 2023) ...............................................17

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) .....................................................................25

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) .........................................................15, 22, 25

*Mogensen v. Body Central Corp.*,
  15 F. Supp. 3d 1191 (M.D. Fla. 2014) ..........................................................17

*Monroe County Employees' Retirement System v. Southern Co.*,
  2018 WL 1558577 (N.D. Ga. Mar. 29, 2018).................................................17

*Next Century Communications Corp. v. Ellis*,
  318 F.3d 1023 (11th Cir. 2003) .......................................................................3

*Omnicare, Inc. v. Laborers District Council Construction Industries
  Pension Fund*, 575 U.S. 175 (2015)................................................................9

*Philadelphia Financial Management of San Francisco, LLC v. DJSP
  Enterprises, Inc.*, 572 F. App'x 713 (11th Cir. 2014) .................................2, 4

*Philadelphia Financial Management of San Francisco, LLC v. DJSP
  Enterprises, Inc.*, 2012 WL 12087438 (S.D. Fla. Aug. 27, 2012) .................6

*Plymouth County Retirement System v. Carter's Inc.*,
  2011 WL 13124501 (N.D. Ga. Mar. 17, 2011)...............................................18

vi

*Roofer's Pension Fund v. Papa*,
    687 F. Supp. 3d 604 (D.N.J. 2023)................................................................16

*Rubke v. Capitol Bancorp Ltd*,
    551 F.3d 1156 (9th Cir. 2009) .......................................................................21

*Schaeffer v. Nabriva Therapeutics plc*,
    2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020) ................................................19

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011) ...........................................................24

*SEC v. Rio Tinto plc*,
    41 F.4th 47 (2d Cir. 2022) .............................................................................23

*Shafer v. Global Payments, Inc.*,
    2024 WL 2789447 (N.D. Ga. Mar. 29, 2024) ...............................................25

*Siegmund v. Xuelian Bian*,
    2018 WL 1611197 (S.D. Fla. Apr. 2, 2018)...................................................24

*Theodore v. Purecycle Technologies, Inc.*,
    2022 WL 20157415 (M.D. Fla. Aug. 4, 2022)...............................................14

*Tung v. Dycom Industries, Inc.*,
    454 F. Supp. 3d 1244 (S.D. Fla. 2020)..........................................................21

*Upton v. McKerrow*,
    887 F. Supp. 1573 (N.D. Ga. 1995)...............................................................12

*Villare v. Abiomed, Inc.*,
    2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) .................................................5

## DOCKETED CASES

*Carvelli v. Ocwen Financial Corp.*,
    No. 9:17-cv-80500-RLR (S.D. Fla.)...................................................................6

*In re Norfolk Southern Corp. Bond/Note Securities Litigation*,
    No. 1:23-cv-04068-LAK-SLC (S.D.N.Y.)........................................................3

## PRELIMINARY STATEMENT

Plaintiffs attempt to concoct securities fraud claims out of the East Palestine derailment (the "Derailment") and the stock price declines that followed that event. But Plaintiffs' claims are nothing more than an attempt to capitalize in hindsight on the Derailment. For numerous reasons, Plaintiffs' claims fail as a matter of law.

*First*, Plaintiffs argue that Defendants misled investors in the years leading up to the Derailment by making generic statements about the Company's commitment to safety and the safety of its operations. But these statements are too general to be actionable as a matter of law. Plaintiffs ignore Eleventh Circuit precedent holding that no reasonable investor would be misled by such nonspecific, unverifiable statements, relying instead on decisions that misapply the puffery doctrine.

*Second*, Plaintiffs challenge statements made *after* the Derailment, which allegedly provided a false justification for the vent and burn. But Plaintiffs lack standing because they last purchased shares *months before* these statements were made, and thus could not have relied on them. The Opposition's attempt to manufacture standing by characterizing the pre- and post-Derailment statements as a part of a "common scheme" also fails because there is no meaningful connection between them. Plaintiffs also fail to plead loss causation for these statements because they do not identify any disclosure that "corrected" the statements.

Finally, Plaintiffs fail to establish that Defendants knew or recklessly

disregarded that any statement was false or misleading when made. Instead, they offer circumstantial allegations of Defendants' roles, general operational knowledge, and unsupported inferences from testimony and government correspondence and reports, which courts in this Circuit have repeatedly held are insufficient to plead scienter.

For these reasons and others, the Court should dismiss the Complaint.

I.    **Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10b-5**

A.    The Complaint Does Not Adequately Allege Any False or Misleading Statement Relating to Safety

1.    *The Safety Statements Are Nonactionable Puffery*

All of the statements cited in Paragraphs 407 through 443 of the Complaint (the "Safety Statements") are nonactionable puffery because they are incapable of objective verification and/or are too general to cause a reasonable investor to rely on them. Mot. at 11-15 (collecting cases). Instead of addressing these cases or their principle, Plaintiffs argue that the statements are not puffery because they are not "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of [their] importance." Opp. at 21.[1]

---

[1] Plaintiffs argue that this Court should ignore the Eleventh Circuit decisions because they reference "context" in their analysis. Opp. at 22-23 n.15. But this refers to the obvious fact that courts sometimes will consider other information—such as the full "context" in which a statement was made—to determine whether it is puffery. *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1322 (11th Cir. 2019) (considering "context" of "remainder of the sentence" to determine statement was puffery); *Phila. Fin. Mgmt. of San Fran., LLC v. DJSP Enters., Inc.*, 572 F. App'x 713, 716 (11th

The cases that Plaintiffs cite do not support their position.  In *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase, Co.*, 553 F.3d 187 (2d Cir. 2009), the Second Circuit held that the bank's statements about its "highly disciplined" risk management and its "focus on financial discipline" were nonactionable puffery because they were "too general to cause a reasonable investor to rely on them."  *Id.* at 205-06.  And, as explained previously, the court in *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189 (N.D. Ga. 2019), did not consider Eleventh Circuit precedent holding that statements that are not verifiable are not actionable.  Mot. at 13 n.9.

Plaintiffs also ask the Court to follow blindly the puffery analysis in the Report and Recommendation that Magistrate Judge Cave issued in *In re Norfolk S. Corp. Bond/Note Sec. Litig.*, 2024 WL 3579096 (S.D.N.Y. July 26, 2024) (the "*Norfolk Bond* Report").  For numerous reasons, this Court should decline to do so.

First, Defendants have not "already litigated and lost" this argument.  Opp. at 21.  Defendants filed objections to the *Norfolk Bond* Report on August 9, 2024, *In re Norfolk S. Corp. Bond/Note Sec. Litig.*, No. 1:23-cv-04068 (LAK) (SLC) at ECF No. 135, and the district court has yet to issue a decision on Defendants' motion.

Second, to the extent that Plaintiffs rely on the *Norfolk Bond* Report to argue

---

Cir. 2014) (similar); *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1029 (11th Cir. 2003) (similar).  That is beside the point here; Plaintiffs do not allege that the "context" of the Safety Statements makes them more verifiable or concrete.

3

that the Safety Statements are actionable because of the importance of safety as a whole to investors (Opp. at 21-23 (citing *Norfolk Bond*, 2024 WL 3579096, at \*12, \*16)), that is inconsistent with the relevant case law.  It also misapprehends the puffery doctrine by conflating the materiality of the subject matter of the statement with whether investors would rely on the particular language used in the statement.

In *JP Morgan Chase*, 553 F.3d 187 (2d Cir. 2009) (*see* Opp. at 21), the Second Circuit held that although the bank's reputation for integrity was "undeniably important" to investors, the particular challenged statements about the subject were nonetheless too general for an investor to rely on.  *Id.* at 206.[2]  The court explained that plaintiffs "conflate[d] the importance of a bank's reputation for integrity" on the one hand "with the materiality of a bank's ***statements*** regarding its reputation."  *Id*.

Other courts, including the Eleventh Circuit, apply the same reasoning.  *See, e.g.*, *DJSP Enters.*, 572 F. App'x at 716 (references to "efficiency" and "accuracy" of company's foreclosure practices puffery because they "[did] not assert specific, verifiable facts that reasonable investors would rely on," despite concerning issues

---

[2] Plaintiffs argue that because other railroads made similar safety statements, investors must have cared about the topic.  Opp. at 22 n.14.  But that turns things on their head; as the Second Circuit noted in *JP Morgan Chase*, "[n]o investor would take such statements seriously in assessing a potential investment, for the simple fact that almost every investment bank makes these statements."  553 F.3d at 206. Plaintiffs also argue that the holding of *JP Morgan Chase* should not apply because Norfolk Southern was purportedly the most dangerous Class I railroad.  Opp. at 22 n.14.  But that has nothing to do with whether the statements are puffery.

4

"important to the [company's] success"); *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 29 (S.D.N.Y. 2016) (puffery inquiry considers "not whether the topic of a statement was a key to corporate success, but the *nature* of the specific statement and whether it concretely assured investors of anything" (emphasis added)).[3]

Plaintiffs next rely on *Equifax* to argue that the Safety Statements are not puffery because they were made "***repeatedly*** to assure investors." Opp. at 22 (quoting *Equifax*, 357 F. Supp. 3d at 1224). But many courts have held that "the repetition of puffery does not, by itself, render it actionable." *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *15 (S.D.N.Y. Sept. 21, 2021); *see also Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 2024 WL 1330047, at *10 (S.D.N.Y. Mar. 28, 2024) (similar); *Lomingkit v. Apollo Educ. Grp. Inc.*, 275 F. Supp. 3d 1139, 1160 (D. Ariz. 2017) (similar). The Eleventh Circuit has also adopted this principle in practice, finding statements to be nonactionable puffery even though they had been repeated in various filings with the U.S. Securities and Exchange Commission ("SEC"), like

---

[3] The out-of-circuit district court cases on which Plaintiffs rely do not require a different result. In *In re Massey Energy Co. Sec. Litig.*, 883 F. Supp. 2d 597 (S.D.W. Va. 2012), the court held that the company's statements that its safety was "improving" and that it was a "recognized industry leader" in safety were capable of verification because they could be—and were—proven false by objective data. *Id.* at 614, 617. And in *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878 (D. Minn. 2011), defendants' statements were not puffery because they were made in conjunction with more definitive statements about the company's business prospects that failed to disclose that the company was engaged in channel stuffing and falsely stated that the company was likely to meet its revenue forecasts. *Id.* at 888.

the Safety Statements here.[4]

Moreover, all of the cases that Plaintiffs cite for this proposition are distinguishable on other grounds. In *In re Immucor, Inc. Sec. Litig.*, 2011 WL 2619092 (N.D. Ga. June 30, 2011), the statements were "designed to reassure" investors in light of the company's "poor performance at FDA investigations." *Id.* at *3. Similarly, in *In re Vale S.A. Sec. Litig.*, 2020 WL 2610979 (E.D.N.Y. May 20, 2020), the issuer had reason to assuage investor concerns regarding safety in the aftermath of a catastrophic dam collapse. *Id.* at *3-5. By contrast, Plaintiffs do not allege that Defendants' general statements about safety were made to reassure the market as to any then-existing concerns. And as discussed *supra* at 3, *Equifax* failed to consider whether the soft statements about security were objectively verifiable.[5]

Finally, there is no merit to Plaintiffs' claim that the Safety Statements are indeed "capable of verification." Opp. at 24. First, Plaintiffs argue that the Safety

---

[4] In *Carvelli* and *DJSP Enterprises*, in which the Eleventh Circuit found statements to be nonactionable puffery, the complaints in those actions make clear that defendants made those statements repeatedly. *See Carvelli v. Ocwen Fin. Corp.*, No. 17-cv-80500-RLR at ECF No. 67 (Am. Compl.) ¶¶ 147, 151, 179, 183, 186, 192, 222, 234 (repeating puffery statements); *Phila. Fin. Mgmt. of San Fran., LLC v. DJSP Enters., Inc.*, 2012 WL 12087438 (S.D. Fla. Aug. 27, 2012) (Am. Compl.) at ¶ 73 (puffery statements contained in "subsequent iterations of the Registration Statement . . . as well as other filings with the SEC"). It is clear in this Circuit that mere repetition does not convert puffery into actionable statements.

[5] To be sure, other statements in *Equifax* were much more specific and therefore capable of objective verification, *see* 357 F. Supp. 3d at 1218-23, but that part of the opinion is distinct from the court's analysis of the generic statements about security.

Statements are verifiable because their falsity can be demonstrated by *any* negative impact from PSR on the safety of the Company's operations—regardless of the extent of the impact. Opp. at 9-13, 24. But the statements cited for this contention only concern the general nature of safety and PSR, and do not make any representations about Norfolk Southern, much less any that could be objectively tested by reference to a standard. *See* ¶ 416 (describing safety as "business imperative" for "all railroads"); ¶ 417 ("At a fundamental level, [PSR] is about using assets in the most efficient manner possible without sacrificing safety"); *id.* (discussing "Class I railroads" generally and stating "customer service" or "returning value to shareholders" does not "ha[ve] to come at the expense of" "safety").[6]

Second, the cases cited in the Opposition involve not general statements about a company's commitment to safety or the safety of its operations, but detailed, verifiable statements about the performance of safety systems. For example, in *In re ChoicePoint, Inc. Sec. Litig.*, 2006 WL 8429145 (N.D. Ga. Nov. 21, 2006), plaintiffs challenged a company's specific assurances that its systems would prevent any data breach and described specifically the system's capabilities. *Id.* at *2, 6-7.

Similarly, the defendants in *In re ValuJet, Inc.*, 984 F. Supp. 1472 (N.D. Ga.

---

[6] Plaintiffs also refer to a statement in which Defendants said that the Company organized its "capital spending" budget to make the railroad "safe." Opp. at 10. But this is still puffery, and in any event, Plaintiffs do not allege any fact concerning the Company's capital spending that renders the statement false or misleading.

7

1997), stated that the company's "safety record had been certifiably among the very best in the airline industry." *Id.* at 1477. This was objectively false based on allegations concerning a federal investigation that identified "numerous" safety violations and imposed operational restrictions. *Id.* at 1477-78. Plaintiffs do not allege that Defendants made any similar verifiable statements about the Company's safety record or the ability of its safety program to prevent accidents or derailments.[7]

Finally, Plaintiffs argue the Safety Statements are verifiably false because Norfolk Southern created a document that listed PSR principles with safety fourth. Opp. at 24 (citing ¶ 107). But this document demonstrates that safety *was* a priority.

>    2.    *The Opposition Fails to Identify Any Material Omissions Related to the Safety Statements*

Plaintiffs also argue that some of the Safety Statements are false or misleading "half-truths" because they purportedly conveyed subsidiary facts that, while not literally false, created a duty to disclose the alleged impact of PSR on safety. Opp. at 12-13. But none of these facts had a sufficiently close nexus to the alleged impact of PSR on safety to give rise to a duty to disclose. *See In re Omega Healthcare*

---

[7] Similarly, in *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223 (S.D.N.Y. 2012), plaintiffs adequately alleged that statements concerning the company's training and safety programs were verifiably false by alleging that those programs were "insufficient to address applicable legal requirements." *Id.* at 243. By contrast, Plaintiffs here do not allege any well-pled facts suggesting that Defendants' training and safety programs failed to comply with any legal or regulatory requirements.

*Inv'rs, Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 272-73 (S.D.N.Y. 2021) ("broad and generic" statements of improved earnings did not create duty to disclose negative information about financial condition because there was no "sufficiently close nexus" between them); *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1305-06 (11th Cir. 2011) (statement of revenue growth did not create duty to report incremental revenue impact of illegitimate activity).  For example, the Company's reference to "record productivity" had nothing to do with safety and did not require disclosure that the Company was allegedly skipping freight car inspections.  Opp. at 13.  The Opposition does not explain how the other challenged statements had a sufficiently close nexus to safety to give rise to a disclosure duty.

3.      *Certain of the Safety Statements Are Nonactionable Opinions*

As Defendants demonstrated in the Motion, the Court can dismiss various Safety Statements on the additional ground that they are nonactionable statements of opinion.  *See* Mot. at 15-16 (citing ¶¶ 431, 440, 442, 443).[8]  Plaintiffs argue that these statements "expressed certainty," but ignore that certain of them use the preface "I think" or "I truly believe."  ¶ 431; *see Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183-84 (2015) (words "I believe" or

---

[8] Plaintiffs argue that the *Norfolk Bond* Report "thoroughly reviewed the case law on opinion statements."  Opp. at 24.  However, the Report did not analyze whether any particular statements were opinion statements; more importantly, none of the statements that Defendants contend are statements of opinion was at issue in *Norfolk Bond*, so Plaintiffs' reference to the Report is a distraction.

"think" "preclud[e] liability"). For the statements about the length of training (¶¶ 440, 443), the Opposition ignores that they expressed opinions about what would be the necessary length of time to train employees. And when the Company stated that it was seeing a "visible uptick[] in qualified employees" (¶ 442), that statement conveyed an implicit opinion that those employees were qualified. *See In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 417 (2d Cir. 2023) (characterizations of company's scientists as "expert" and "world-class" nonactionable puffery). Finally, the Opposition points to no facts showing that the speakers did not believe their statements were true when made. Opp. at 24-25.[9]

### B.    The Complaint Does Not Adequately Allege an Actionable Misstatement Related to the Vent and Burn

#### 1.    *Plaintiffs Lack Standing to Challenge Vent and Burn Statements*

Plaintiffs do not dispute that they made their final Norfolk Southern stock purchases on September 30, 2022 and November 29, 2022, respectively, and that the

---

[9] The Complaint merely alleges that FRA Administrator Bose sent a letter to Squires on October 28, 2021 inquiring about employee injuries and asking the Company to "consider any potential relationship between recent changes to the duration of its conductor training, and the frequency and severity of conductor incidents and injuries." ¶ 473. Nothing in that letter contradicts Defendants' statements about the necessary length of training, let alone shows that they did not believe their statements when they made them. Plaintiffs also cite a January 5, 2023 letter from Bose to several railroad CEOs. This letter is similarly devoid of any information that contradicts Defendants' statements and was sent *after* all of the challenged statements, so it could not possibly demonstrate Defendants' knowledge at that time.

Vent and Burn Statements were made on February 5 and 6, 2023.[10]   Because Plaintiffs could not possibly have relied on those statements or their price impact in purchasing the Company's stock, they lack standing to pursue claims based on these statements.  *See Licht v. Watson*, 567 F. App'x 689, 691-92 (11th Cir. 2014) (no standing absent purchases or sales in connection with alleged fraudulent conduct).

Plaintiffs' response is that the Vent and Burn Statements and the Safety Statements purportedly were part of a "common scheme to defraud."  Opp. at 36. But the Vent and Burn Statements (which concern the temperature of derailed railcars and the decision to conduct a vent and burn operation on those cars) are entirely unrelated to the Safety Statements (which concern the Company's general commitment to safety and the safety of operations as it implemented PSR).  *See* Mot. at 18-19.  Despite the obvious and significant differences in the subject matter and context of these statements—securities filings directed at investors versus statements to Ohio residents responding to an emergency—Plaintiffs argue that the statements somehow are part of a common scheme because Deutsch uttered the word "safety" when discussing the vent and burn. Opp. at 36.  This sophistry establishes no linkage or common thread.   Courts have rejected common scheme arguments based on statements that were much more related.  *See, e.g.*, *Abato v. Marcam Corp.*, 162 F.R.D. 8, 11 (D. Mass. 1995) (no common scheme where statements concerning

---

[10] The Vent and Burn Statements are quoted at ¶¶ 446-47, 449-51, and 453.

accounting issues related to different transactions and time periods).  Plaintiffs' cases

are easily distinguishable.  In *In re Internap Network Servs. Corp. Sec. Litig.*, 2012

WL 12878579 (N.D. Ga. Aug. 23, 2012), the related statements found to be part of

a common scheme all concerned the company's ability successfully to integrate an

acquired business.  *Id.* at *2-3.  Similarly, in *Upton v. McKerrow*, 887 F. Supp. 1573

(N.D. Ga. 1995), the statements all concerned the company's expansion program and

site selection and training processes associated with the program.  *Id.* at 1575, 1577.

     2.     *The Complaint Does Not Adequately Allege Conduit Liability*

The Opposition also fails to establish that Governor DeWine was acting as a

conduit for Defendants when he issued the evacuation notice.  Plaintiffs do not

dispute that a plaintiff must allege both "particularized allegations of the

misrepresentation made at the meetings" between defendants and a third party, and

facts demonstrating that Defendants acted "with the intent that the third party

communicate those statements to the market."  Mot. at 19 (citing cases).[11]

First, Plaintiffs do not adequately allege that anyone conveyed to Governor

DeWine that a "drastic temperature change" had occurred "[w]ithin the last two

hours" on the evening of February 5.  Instead, they now argue that Wood told the

---

[11] To the extent Plaintiffs argue that Defendants have "waived" certain arguments (*see* Opp. at 16 n.8, 38), that misstates the law.  *See, e.g.*, *Bacon v. Stiefel Lab'ys, Inc.*, 714 F. Supp. 2d 1186, 1189 n.1 (S.D. Fla. 2010) ("suggestion that Defendants have waived arguments not raised in the first motion to dismiss is without merit").

Governor that the temperature in one car was rising on the evening of February 5 (a point Plaintiffs do not dispute).  Opp. at 14, 17.  This is insufficient.  *See Carpenters Health & Welfare Fund of Phila. v. Coca-Cola Co.*, 2002 WL 34089163, at *19 (N.D. Ga. Aug. 20, 2002) (no conduit liability absent allegations that defendants conveyed specific facts allegedly shared with public).

Second, Plaintiffs do not allege any well-pled facts suggesting that Wood *intended* for Governor DeWine to communicate this information to the market.  *See* Mot. at 19-20.  Instead, they merely say that it is "self-evident."  Opp. at 17.  But it is far from self-evident that a regional hazmat manager communicating "on matters of public safety during a crisis" (Opp. at 17) did so with the intention that the Governor disseminate that information to the market or even the public generally.[12]

### 3. The Complaint Does Not Adequately Allege Falsity With Regard to Deutsch's Vent and Burn Statements

As shown in the Motion, Plaintiffs' claims concerning the February 6 press conference statements also fail because they are neither false nor misleading in context.  Mot. at 21-23.  Plaintiffs' only response is that Defendants are "try[ing] to *change* the statements."  Opp. at 18.  But it is Plaintiffs who quote the statements

---

[12] Plaintiffs cite *In re Retek Inc. Sec. Litig.*, 2007 WL 14352 (D. Minn. Jan. 3, 2007), to argue that the Court may infer intent based on the context in which the information was conveyed.  Opp. at 17.  True, but in that case, defendants made statements to investment analysts who (as was expected) then reported the same information to investors.  2007 WL 14352, at *7.  The allegations here are in no way analogous.

13

out of context (and ask the Court not to consider the context in which they were made, *see* ECF No. 101-5 at 4-5). When considered in the proper context, as the law requires, the statements are neither false nor misleading. *See* Mot. at 21-23.

        4.     *The Complaint Does Not Adequately Allege an Actionable Omission Related to the Vent and Burn*

Plaintiffs largely abandon their claims as to the February 6 press release, which fail for the reasons stated in the Motion. *See* Mot. at 23. Plaintiffs now challenge only one statement in the release, claiming that the statement that the vent and burn was completed "under the supervision of experts" was misleading because the Company did not disclose that OxyVinyls was *not* one of those experts. Opp. at 19 n.11. But the release does not identify or characterize the experts involved at all; it could not possibly have created a duty to disclose who was or was not involved. *FindWhat*, 658 F.3d at 1305.[13]

    C.    <u>The Complaint Does Not Adequately Allege Scienter</u>[14]

        1.     *No Scienter With Regard to the Safety Statements*

---

[13] Plaintiffs' cited case, *Theodore v. Purecycle Techs., Inc.*, 2022 WL 20157415 (M.D. Fla. Aug. 4, 2022), is inapposite. There, defendants misled investors as to the quality and extent of management's experience by not disclosing that executives "previously caused six businesses to fail." *Id.* at *1, 13.

[14] To the extent that the Opposition relies on impermissible sources including the NTSB Report and the Chair's remarks, those allegations should be disregarded. *See* Defendants' Opposition to Plaintiffs' Request for Judicial Notice and Reply in Support of Defendants' Request for Judicial Notice. Moreover, the Company's purported conduct in an investigation months after the challenged statements (Opp. at 32-33) has no bearing on what any Defendant knew at the time of the statements.

Plaintiffs contend that the Individual Defendants "knew" or "recklessly ignored" that the Safety Statements were false or misleading because they allegedly participated in the implementation of PSR.  Opp. at 25-26.  But general allegations about executives' "responsibilities" or that they "spearheaded" or "championed" the Company's business strategy (Opp. at 27) are little more than "status" allegations that fail to establish scienter.  *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249-51 (11th Cir. 2008) (rejecting scienter "allegations that hinge entirely on a theory that senior management 'must have known' everything that was happening"); *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1316 (N.D. Ga. 2006) (similar).  The Complaint is devoid of the particularized facts required to demonstrate that Defendants knew or recklessly disregarded that the Company was not committed to safety, or that its operations were objectively unsafe.[15]  For example, Shaw's Senate testimony does not demonstrate his knowledge of falsity.  Opp. at 24 (citing ¶¶ 103, 107).  The Opposition fails to point to anything in that testimony suggesting that the Company's safety mechanisms were objectively deficient, or that the Company focused on profits at the expense of safety.  *See* Ex.

---

[15] Plaintiffs elsewhere cite *In re Netbank, Inc. Sec. Litig.*, 2009 WL 2432359 (N.D. Ga. Jan. 29, 2009), to argue that "access to information" that "contradict[s] [defendants'] public statements" may establish scienter. *Id.* at *12. But there, unlike here, plaintiffs alleged the necessary specifics: that defendants knew their accountant resigned over violations of internal controls and were notified by the SEC of accounting misstatements, "but purposely withheld that information." *Id.*

15

15 at 96 (U.S. Senate Comm. on Env. and Public Works Tr., March 9, 2023).[16]  To the contrary, the quoted soundbite does not even mention safety, and Plaintiffs' interpretation is inconsistent with the full context of his statement and his testimony concerning the Company's significant investments *in safety*.  *See id.* at 96, 115.

Next, Plaintiffs hope to establish scienter based on the unremarkable fact that Defendants held themselves out as knowledgeable about the impact of PSR on safety and "spoke in detail" about the topic.  Opp. at 28-29.  But this proves too much; every speaker presumably is knowledgeable about the subject of his or her statement. The law requires specific allegations that the speaker knew the statements were false.[17]  *See Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 621 (D.N.J. 2023) (that defendant "held herself out as knowledgeable" about subject of statements "does not mean she knew of, or was reckless" as to contrary facts); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 238 (S.D.N.Y. 2022).[18]

---

[16] The Court may consider the transcript from the March 9, 2023 U.S. Senate Committee on Environmental and Public Works, which is incorporated by reference into the Complaint.  ¶ 103; *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023).

[17] Plaintiffs' contention that because Sanborn and Shaw testified to Congress on certain topics they must have had scienter (Opp. at 31-33) fails for the same reason. And although Plaintiffs argue that Sanborn's departure from the Company supports scienter (Opp. at 32 n.18), the Opposition does not point to any well-pled facts suggesting that Sanborn's departure was related to any supposed misstatement, so their case distinctions on this point are irrelevant.  *See* Mot. at 31-32.

[18] While Plaintiffs rely on *Allegheny County Employees' Retirement System v. Energy Transfer LP*, 532 F. Supp. 3d 189, 210-11 (E.D. Pa. 2021) (*see* Opp. at 28-

Plaintiffs also claim that the Individual Defendants acted with scienter because they met with employees who expressed safety concerns. Opp. at 29. But this is too vague, as Plaintiffs do not allege with particularity what information was learned from any such discussion. *See Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1220-21 (M.D. Fla. 2014) (allegations that defendants "regularly received and reviewed information" insufficient absent allegations that "[d]efendants were directly confronted with specific information that actually contradicted" statements). Bare allegations of a hands-on leadership style fail for the same reason. Mot. at 26.[19]

Relatedly, Plaintiffs seek to establish scienter for Shaw and Sanborn based on their alleged access to certain internal metrics concerning train movements and revenues. Opp. at 30 (citing ¶¶ 468-69). But Plaintiffs' allegations fail to show that those metrics somehow require the conclusion that the Company was not committed

---

29), there, unlike here, the allegations established that the executives knew specific facts undermining the challenged statements.

[19] The Opposition cites *Maverick Fund, Ltd. v. Mohawk Indus., Inc.*, 2023 WL 2887603 (N.D. Ga. Mar. 31, 2023), for the proposition that an executive's presence at regular staff meetings supports scienter. Opp. at 29. But plaintiffs there specifically alleged that the fraudulent scheme was discussed at those meetings. *Mohawk*, 2023 WL 2887603 at *11. Similarly, the defendants in *Monroe County Employees' Retirement System v. Southern Co.*, 2018 WL 1558577 (N.D. Ga. Mar. 29, 2018), allegedly attended regular meetings "at which the significant delays in the Kemper Plant project were discussed." *Id.* at *29. And in *In re HD Supply Holdings, Inc. Sec. Litig.*, 341 F. Supp. 3d 1342 (N.D. Ga. 2018), the defendants allegedly knew about the condition of the supply chain because they were involved in daily and weekly updates "*of the [] supply chain*," which included data. *Id.* at 1361 (emphasis added). Plaintiffs do not make any comparable allegations here.

to safety or that its operations were objectively unsafe.  *See* Mot. at 27 (citing cases).

Plaintiffs' other scattershot scienter arguments fare no better:

**Defendants' Compensation.**  Plaintiffs allege that the Individual Defendants "were focused 'solely on profits'" because one aspect of their compensation was based on achieving "PSR-based goals," namely, the Company's operating ratio ("OR").  Opp. at 30.  The only case that Plaintiffs cite—*Coca-Cola Co.*, 2002 WL 34089163 (N.D. Ga. Aug. 20, 2002)—involved compensation based on the very metrics that defendants allegedly manipulated as part of the fraud.  *Id.* at *14-15. Plaintiffs do not allege that the Company ever misstated its OR, severing any connection between the Defendants' compensation and any motive to commit fraud.

**Core Operations.**  Plaintiffs seek to bolster their scienter argument with a single line in the Company's 2022 Proxy Statement: "[s]afety is core to our business."  Opp. at 30 (quoting ¶ 415).  As an initial matter, the Eleventh Circuit "has never adopted" the core operations doctrine, and in any event, Plaintiffs do not (and cannot) suggest that the Proxy Statement employed the term in the unique *legal* context of the "core operations" doctrine.  *Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, 2011 WL 13124501, at *17 (N.D. Ga. Mar. 17, 2011).  Plaintiffs cite *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018), but in addition to involving a true "core operation"—the distributor program at issue in that case made up 84% of defendants' business, *id.* at *14—the court ultimately based scienter

18

on additional allegations.  *Id.* at \*13.

**FRA Letters and Special Audit Report.**  Plaintiffs allege that Squires and Shaw received letters and a July 8, 2022 audit report ("FRA Audit Report") from the FRA that "put them on notice" of safety issues.  Opp. at 31.  But the letters either post-date the challenged statements or otherwise fail to demonstrate what Squires or Shaw knew at the time of the statements.  Mot. at 27-28.  The October 28, 2021 letter did not identify any conclusive causal "relationship" between the training policies and conductor incidents; it notified the executives only of a "potential" issue.  Opp. at 31 (quoting ¶ 473); *see also Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at \*12 (S.D.N.Y. Apr. 28, 2020) (no scienter where it was "unclear" that regulator's feedback "contradict[ed]" challenged statements).

Similarly, Plaintiffs do not dispute that the FRA Audit Report post-dates nearly all the Safety Statements and therefore cannot supply scienter for those statements.  *See* Mot. at 29.[20]  Plaintiffs' cited authority does not suggest otherwise. *See ValuJet, Inc.*, 984 F. Supp. at 1480 (regulator findings issued "at the same time" as challenged statements supported scienter).  Regardless, the FRA Audit Report did not put its recipients on "notice" that the Company was not committed to safety or that its operations were unsafe—to the contrary, the Report concluded that the

---

[20] Plaintiffs also do not address any of Defendants' cases holding that similar reports conveying interim agency feedback cannot support scienter.  *See* Mot. at 28-29.

19

Company's safety programs "are largely effective."  ECF No. 99-6 (FRA Audit Report) at 4.  Plaintiffs do not cite any case where similar feedback supported scienter.  To the contrary, the "clear warnings" alleged in *Equifax* (Opp. at 31) identified "critical weaknesses" and "vulnerabilit[ies]" that directly contradicted statements about the company's cybersecurity capabilities.  357 F. Supp. 3d at 1234.

**Confidential Witnesses.**  Finally, Plaintiffs argue that the accounts of certain former employees ("FEs") and NTSB witnesses are indicative of scienter because they are purportedly "reliabl[e]" and together allege "company-wide" conduct.  Opp. at 34-36.  Putting aside the significant questions about the reliability and scope of the observations that the Complaint ascribes to these witnesses (Mot. at 24-25), *none* of these witnesses state facts concerning Defendants' knowledge with the requisite particularity.  *City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*, 806 F. Supp. 2d 1267, 1296 (N.D. Ga. 2011).  This includes the two witnesses who allegedly met with two Defendants, as the Complaint fails to allege any specific information they conveyed or how it contradicted any statement.  *See* Mot. at 27.[21]

---

[21] Plaintiffs' cases do not support their position that former employees may collectively allege "company-wide" conduct irrespective of whether they attest to specific information conveyed to any Defendant.  For example, in *City of Sunrise Gen. Employees' Ret. Plan v. Fleetcor Techs., Inc.*, 2018 WL 4293143 (N.D. Ga. May 15, 2018), the court merely found that former employee allegations of "company-wide" conduct supported the application of the core operations doctrine, which as discussed above, could not apply here.  *Id.* at *11.  In *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008), the confidential witnesses (who were former executives) alleged direct "involvement" by defendants

20

2.     *No Scienter With Regard to Vent and Burn Statements*

**February 5, 2023 Evacuation Notice.**  Plaintiffs contend that Wood told Governor DeWine that car temperatures were "volatile" and "in fact rising."  Opp. at 14.  But Plaintiffs do not allege that Wood made a false statement to Governor DeWine, much less that he knew or recklessly disregarded information suggesting that either statement was false, as they must to plead conduit liability.[22]  *See Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1166 (9th Cir. 2009).

**February 6, 2023 Press Conference.**  Plaintiffs allege that Deutsch knew or recklessly disregarded information that contradicted his statements, in which he purportedly suggested that a chemical reaction was taking place in the railcars and that an explosion would occur.  Opp. at 18-19.  But again, this argument misinterprets Deutsch's statements by taking them out of context.  In context, his statements simply described the vent and burn process and what a hypothetical uncontrolled explosion would entail; he did not represent that one would necessarily

---

and that they reported concerns to the highest levels of the company (*id.* at 1059-60).  Plaintiffs' other cited cases concern former employee allegations of "first-hand interactions with the Defendants concerning the matters alleged in the Complaint." *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 196-97 (S.D.N.Y. 2010); *see also Tung v. Dycom Indus., Inc.*, 454 F. Supp. 3d 1244, 1258 (S.D. Fla. 2020); *Equifax*, 357 F. Supp. 3d at 1236-37; *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 925 (11th Cir. 2020).

[22] Plaintiffs concede that an increase in temperature occurred just before Wood's purported discussion with Governor DeWine, and that the increase was reflected in Wood's notes.  Opp. at 14-15; ¶ 318.

occur.  *See* Mot. at 22-23.  Plaintiffs also appear to argue that Shaw had scienter when he purportedly "approved" Deutsch's statements.  ¶ 449; Opp. 19-20.  But Plaintiffs fail to plead with particularity that Shaw actually reviewed or approved the statements in advance, as the law requires.  *See In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at \*5 (11th Cir. Aug. 8, 2023); *Mizzaro*, 544 F.3d at 1238. Plaintiffs merely conclude it happened.  Opp. at 19.  Plaintiffs' vague allegation about a "private meeting" (¶ 349) is also insufficiently particularized.

**February 6, 2023 Press Release.**[23]  Plaintiffs argue that they have pled scienter for the statement that the vent and burn was completed "under the supervision of experts" because the individuals purportedly responsible for the statement (Shaw, Wood, and Deutsch) each "knew" that OxyVinyls "did not supervise" the operation.  Opp. at 19 n.11; ¶¶ 326, 453.  But the statement is true: Plaintiffs do not contest that the vent and burn was conducted "under the supervision of experts."  Opp. at 19 n.11.  And because there was nothing misleading about the purported failure to note that OxyVinyls was not involved (*see supra* at 14), *a fortiori*, there was no scienter.  *See In re Centerline Holding Co. Sec. Litig.*, 380 F. App'x 91, 94 (2d Cir. 2010) (no scienter for omission where no duty to disclose it).[24]

---

[23]  In addition to being barred from consideration (*see supra* at 14 n.14), the NTSB Report does not support scienter because Plaintiffs rely only on broad conclusions and not particularized facts connecting to any Individual Defendant.  Opp. at 32-33.

[24] Plaintiffs do not specifically allege that Shaw approved the press release.  ¶ 360; *see In re Tupperware Brands Corp. Sec. Litig.*, 2021 WL 247870, at \*4 n.7 (M.D.

D.    The Complaint Does Not Adequately Allege Scheme Liability

Plaintiffs alternatively contend that they state "scheme" liability claims under Rule 10b-5(a) and (c).  But this argument fails because their claims are based entirely on alleged misstatements and omissions, and not any additional "deceptive" conduct.

As a matter of law, misstatements and omissions cannot serve as the sole basis for scheme liability under Rule 10b-5(a) and (c).  *See IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp*., 660 F. App'x 850, 858 (11th Cir. 2016) (scheme liability requires "conduct beyond [] misrepresentations or omissions"); *In re Galectin Therapeutics, Inc. Sec. Litig*., 157 F. Supp. 3d 1230, 1238-39 (N.D. Ga. 2015) (no scheme liability where Rule 10b-5(a) and (c) allegations same as Rule 10b-5(b) allegations), *aff'd*, 843 F.3d 1257 (11th Cir. 2016); *Gnanaraj v. Lilium N.V.*, 2024 WL 3916758, at *11 (S.D. Fla. Aug. 23, 2024) (same). That is all that Plaintiffs allege here, as they assert that the Defendants committed fraud exclusively through the statements that form the basis of their Rule 10b-5(b) claims.[25]  That Defendants implemented PSR and the vent and burn cannot supply

---

Fla. Jan. 25, 2021) (assertion that executive "responsible" for statement because it would be "implausible" to assume otherwise insufficient).

[25] *Lorenzo v. SEC*, 587 U.S. 71 (2019), does not alter this analysis.  There, the Court held that a non-speaker could be held liable under Rule 10b-5(a) or (c) if he or she disseminated a statement with intent to defraud. *Id.* at 78-79.  But that only expanded the group of possible defendants in a scheme claim involving misrepresentations and did not overturn the requirement of additional deceptive conduct beyond misstatements. *See SEC v. Rio Tinto plc*, 41 F.4th 47, 52-53 (2d Cir. 2022) (post-*Lorenzo*, affirming dismissal of scheme claim that "alleged 'only that [defendants]

23

the additional conduct needed for a scheme because there was nothing "deceptive" about it. *See SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (no scheme liability where conduct "deceptive only because of . . . public misrepresentations").[26]

E. The Complaint Does Not Adequately Allege Loss Causation With Regard to the Vent and Burn Statements

Plaintiffs do not dispute that the Complaint does not allege any corrective disclosures that "concerned the temperature of the railcars" or "the likelihood of polymerization," or otherwise showed that the vent and burn was "unnecessary"— the facts allegedly misrepresented in the Vent and Burn Statements. Opp. at 39.

Plaintiffs nonetheless argue that a corrective disclosure need only "relate" to the "subject matter" of the alleged misstatements. Opp. at 39 (citing *Equifax*, 357 F. Supp. 3d at 1249). But that is not the standard (and not even *Equifax* applies such a low bar for loss causation).[27] Instead, a corrective disclosure must—as its name implies—"correct" or "reveal" the falsity of the challenged statements. *FindWhat*,

---

failed to prevent misleading statements from being disseminated by others'").

[26] The scheme liability claims also fail because Plaintiffs do not adequately allege a misstatement/omission, scienter, or loss causation for the Vent and Burn Statements. *See supra* at 12-14, 21-22; *infra* at 24-25; *see also Siegmund v. Xuelian Bian*, 2018 WL 1611197, at *5 (S.D. Fla. Apr. 2, 2018) (scheme liability elements).

[27] In *Equifax*, the court held that an issuer's disclosure that it lacked effective data breach crisis management was "corrective" of misrepresentations about its data security policies, including the strength of its data risk management program. 357 F. Supp. 3d at 1249-50; *see id*. at 1249 (explaining corrective disclosures "reveal[] to the market the pertinent *truth that was previously concealed*"). Here, by contrast, the purported disclosures do not "correct" any alleged misstatement.

658 F.3d at 1311 & n.28; *Meyer v. Greene*, 710 F.3d 1189, 1200 (11th Cir. 2013) (argument that disclosure "caused [] stock price to drop and covered the same subject matter . . . as the fraud alleged in the complaint" insufficient because "a corrective disclosure must 'reveal[ ] to the market the falsity of [a] prior statement'"). Plaintiffs do not allege any statement that "corrected" the Vent and Burn Statements.[28]

## II.    Plaintiffs Have Not Adequately Alleged a Section 20(a) Claim

As explained in the Motion, Plaintiffs' Section 20(a) claim necessarily fails because they fail to state a primary violation of Section 10(b). *See* Mot. at 40.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice.[29]

---

[28] To the extent Plaintiffs argue that the costs of the vent and burn clean-up constituted a materialization of a concealed risk (Opp. at 39-40), they nowhere allege the "risk" that materialized. *Shafer v. Global Payments, Inc.*, 2024 WL 2789447, at *13 (N.D. Ga. Mar. 29, 2024) (bare allegation that concealed risks "materialized" "not sufficient"). Moreover, the costs did not "reveal" the supposed truth that the vent and burn was unnecessary. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 514 (2d Cir. 2010); *see also In re MiMedx Grp., Inc. Sec. Litig.*, 2021 WL 7210372, at *5 (N.D. Ga. Mar. 25, 2021) ("[T]he Eleventh Circuit has never decided whether the materialization-of-concealed-risk theory may be used to prove loss causation").

[29] The Court should deny Plaintiffs' cursory request for leave to amend because the Opposition offers no reason to believe that they could rehabilitate their deficient pleading if given another opportunity. *See Mizzaro*, 544 F.3d at 1257.

Date: September 23, 2024          Respectfully submitted,

*/s/ Hilary Houston Adams*
Hilary Houston Adams
Georgia Bar No. 926142
HALL, BLOCH, GARLAND & MEYER, LLP
900 Circle 75 Parkway, Suite 500
Atlanta, Georgia 30339-3099
Telephone: (678) 888-0036
Fax: (678) 379-6124
hilaryadams@hbgm.com

Michael G. Bongiorno (admitted *pro hac vice*)
Tamar Kaplan-Marans (admitted *pro hac vice*)
Jeremy T. Adler (admitted *pro hac vice*)
Ripley B. Shiarella (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
michael.bongiorno@wilmerhale.com
tamar.kaplan-marans@wilmerhale.com
jeremy.adler@wilmerhale.com
ripley.shiarella@wilmerhale.com

Denise Tsai (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000
denise.tsai@wilmerhale.com

*Counsel for Defendants Norfolk Southern
Corporation, James A. Squires, Alan H. Shaw,
and Cynthia M. Sanborn*

26

## CERTIFICATE OF COMPLIANCE

I hereby certify that the Reply in Support of Defendants' Motion to Dismiss the Consolidated Complaint for Violations of the Federal Securities Laws has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(C).

/s/ Hilary Houston Adams
Hilary Houston Adams

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2024, I electronically filed the foregoing Reply in Support of Defendants' Motion to Dismiss the Consolidated Complaint for Violations of the Federal Securities Laws with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

_/s/ Hilary Houston Adams_
Hilary Houston Adams