The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days.  You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

**Stenographic Reporter note:**

**No AI technology was used in the preparation of the**

**Official Certified U.S. District Court Transcript**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


BUCKS COUNTY EMPLOYEES                    )          Docket Number
RETIREMENT SYSTEM, et al.                 )          1:23-CV-04175-SDG
                                          )
                                          )
                    Plaintiffs,           )
                                          )
                                          )
          v.                              )
                                          )          Atlanta, Georgia
                                          )          June 30, 2025
NORFOLK SOUTHERN                          )
CORPORATION, et al.                       )
                                          )
                                          )
                    Defendants.           )

TRANSCRIPT OF TELECONFERENCE
BEFORE THE HONORABLE STEVEN D. GRIMBERG
UNITED STATES DISTRICT JUDGE

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFFS:                    MR. JASON C. DAVIS
                                       MS. ASHLEY M. PRICE
                                       MR. JACK A. GEPHART
                                       MR. MICHAEL A. CAPLAN
                                       MR. CAMERON B. ROBERTS
                                       MR. JOHN C. HERMAN
                                       MR. DYLAN ISENBERG
                                       MR. JOHNSTON WHITMAN
                                       MS. JENNIFER CARINGAL
                                       MS. EVELYN SANCHEZ-GONZALEZ

FOR THE DEFENDANTS:                    MS. TAMAR KAPLAN-MARANS
                                       MS. DENISE TSAI
                                       MS. HILARY H. ADAMS
                                       MR. WILLIAM BRENC
                                       MS. SARAH MACIEL

OFFICIAL COURT REPORTER:               ALICIA B. BAGLEY, RMR, CRR


Proceedings recorded by mechanical stenography, transcript produced
by computer

P R O C E E D I N G S

(in Atlanta, Fulton County, Georgia; June 30, 2025;

all parties by Zoom)

THE COURT:  Let me call the case.  This is Bucks County Employees Retirement System vs. Norfolk Southern.  Case Number 23-CV-4175.  Let's have appearances of counsel beginning with the plaintiff.

MR. DAVIS:  Good morning, Your Honor.  Jason Davis of Robbins Geller Rudman & Dowd, LLP, for the plaintiffs.

THE COURT:  Good morning.

MS. PRICE:  Good morning, Your Honor.  Ashley Price of Robbins Geller Rudman & Dowd, LLP.  I also have with me in the room Jen Caringal, Jack Gephart, and Evelyn Sanchez Gonzalez.

THE COURT:  All right.  Good morning.  Good to see you all.

MS. PRICE:  Good morning.

MR. WHITMAN:  Good morning, Your Honor.  Johnston Whitman from Kessler Topaz Meltzer & Check on behalf of the plaintiffs and joining me today is my colleague Dylan Isenberg also for the plaintiffs.

THE COURT:  All right.  Good morning.

MR. HERMAN:  Good morning, Your Honor.  John Herman from Herman Jones for the plaintiffs, as well.

MR. CAPLAN:  Good morning, Your Honor.  I think this is the final group for the plaintiffs.  This is Mike Caplan.  I'm also

joined by Cameron Roberts of Caplan Cobb.

THE COURT:  Good morning.  Good to see you both.

MR. CAPLAN:  Good to see you.

MS. KAPLAN-MARANS:  Good morning.  This is Tamar Kaplan-Marans from WilmerHale for the defendants.  I'm joined by my colleagues William Brenc, Denise Tsai, and Sarah Maciel.  We also have local counsel on the line.

MS. ADAMS:  Good morning, Your Honor.  This is Hilary Adams with Hall Bloch Garland & Meyer local counsel for the defendants.

THE COURT:  Okay.  Good morning.  Is that everyone?  Okay.  Great.

Well, thank you all for making yourselves available and thank you, Mr. Roberts, for flagging this outstanding scheduling order for us because it came in at a very busy time.  I took a look at it and I didn't have a great reaction to it which is what we're going to talk about today and intended to have a conference and then it fell off the radar so thank you for flagging this for me.

This case has been pending for over two years and I recognize that a big chunk of that was while a motion to dismiss was pending before me and so I'm partly to blame for that.  But given the age of this case, I'm concerned about how long these deadlines go.  But I also recognize I'm sure this has been a very carefully reached agreement among many counsel so I wanted to give you all an opportunity to articulate how you came about these deadlines before I

just sort of arbitrarily start cutting dates.

So who would like to sort of walk me through that?

MR. DAVIS:  Good morning, Your Honor.  Jason Davis, counsel for the plaintiffs, as mentioned.

I can perhaps get it started just by apologizing to the Court if we didn't satisfy the Court's expectations on schedule.  The Court is correct that the parties met and conferred and engaged in extensive negotiations to reach the schedule before the Court.  There were approximately five meet and confers over the course of many weeks, a number of drafts went back and forth.  You know, a big chunk of the schedule, as the Court has certainly observed, has to do with the timing of the collection and production of documents.

From the defendants' point of view, I don't necessarily want to speak to the substance of that before the defendants do.  I do want to convey the message that we did reach this stipulation and in general we want to stand behind the stipulations and not fight about them after we submit them to the Court.  I will just say in conclusion that there are a number of compromises embedded in the stipulation.

With that, if the Court doesn't have any particular questions for the plaintiffs, I would respectfully defer to the defendants on the fact discovery schedule.

THE COURT:  Okay.  I have particular questions, but let me hear first from counsel for defendants just from a 10,000-foot view.

MS. KAPLAN-MARANS:  Sure.  Good morning, Your Honor.  I

second what Mr. Davis said.  We have -- the parties have been working collaboratively and we're very appreciative of that.  We did have a number of meet and confers to arrive at this schedule.  We looked to precedent in this district from other similar cases and found other examples with similar discovery schedules.  I'm happy to give those to you if it's helpful to give you those cites.

We believe that in this case the plaintiffs are seeking extensive discovery, just some highlights of that.  They've served 105 requests for production on us at the end of May.  We responded to those at the end of June -- last Monday, actually, June 23rd.  We do have a meet and confer with plaintiffs tomorrow to talk through those. We're moving ahead as quickly as possible and we plan to continue to do so and to do so in good faith.

Their initial disclosures identified 250 individuals and entities that they plan to rely on for discovery and there are 35 subjects identified for discovery in the joint discovery plan so plaintiffs have signaled that they expect it to be quite extensive in terms of discovery.  So we are just trying to account for that in coming up with this schedule which will take some time to get through fact discovery.

THE COURT:  Well, I appreciate that and I appreciate that background and certainly appreciate the fact that you all have had meet and confers as many times as you have.  As you can imagine, we don't get that on every case and this is obviously not a run-of-the-mill case and we have sophisticated counsel on both sides

and I appreciate the fact that you have made those efforts.

Let me ask you about particular items that caught my eye. One is the deadline to file the motion for class certification. As you know, that motion tends to be filed much earlier in the process than what is contemplated here. Why is it strung out so long until the end of February for that motion to be filed?

MR. DAVIS: I can speak to that subject, if it pleases the Court.

So historically it meets security fraud class actions. The class certification motion was much more streamlined and the two core issues, historically, had simply been was stock traded in an efficient market and is there a class-wide basis or a class-wide methodology for assessing damages and that was a very, you know, short and sweet briefing process.

What happened a couple of years ago is the Supreme Court issued a ruling in a Goldman Sachs case that basically allowed the defendants to test the price impact of certain information throughout the class period in the case. At a very high level all that means, Your Honor, is that there is a deeper dive -- there tends to be a deeper dive into the substance of the case more quickly and from the plaintiffs' point of view what that means, in turn, is that the questions become more fact intensive and to address them we need fact discovery, and for that reason the beginning of class certification is placed after, you know, the bulk of fact discovery is complete.

To give the Court a more precise example, our expectation

is that the defendants will say issues around safety, the impact of precision schedule railroading on safety were not important to investors and, therefore, would not have impacted the price of the stock.  That's very easy to state at a very high level, but we need the evidence to address what we expect will be one of the defendants' substantive defenses to class certification at the appropriate time.

In conclusion, to address the Court's question very precisely, the plaintiffs requested class cert after fact discovery in order to have the evidence we believe will be necessary to thoroughly treat the defendants expected approach to class certification.

THE COURT:  Okay.  Ms. Kaplan-Marans, anything you wish to add to that?

MS. KAPLAN-MARANS:  Yes.  Back to what Mr. Davis said, I think he just previewed our opposition for you which is very helpful. We do expect that class certification will be in depth and substantive and require experts so we are in agreement with plaintiffs that we do need this time that is accounted for in the schedule for class certification briefing.

THE COURT:  All right.  Well, under the schedule, then, that filed at the end of February and then we have the opposition due 60 days later, April 30th, and then a reply a month later on June 30th.  Is it the expectation that I would issue a ruling on that sufficiently in advance of the summary judgment deadline in November? If so, how far in advance?

MR. DAVIS:  I'll just speak from experience, Your Honor, on this point, and this is not statistically backed up.

Some courts address class certification quickly and before summary judgment.  I've had cases where it's not addressed before summary judgment, so that's the best guidance I can provide.  I think, in short, class certifications -- a decision on class certification isn't necessary to the filing of summary judgment papers.

THE COURT:  Well, what would you all prefer?  I mean, would it streamline the summary judgment papers?  Would it save resources if we knew where we stood on the class cert question before summary judgment?

MR. DAVIS:  Yes.  There's no question that it would be helpful and I'm simply presenting some experience out of deference to the Court and the Court's schedule.  Sooner rather than later would be helpful.  I hasten to note that we have a long period of time ourselves and there's a lot of attorneys working on this case on this side and the Court doesn't have 10 lawyers supporting the Court, I assume, and so I'm just being cognizant of the fact that it could take much longer than 60 days, for example.  But, yes, to answer the Court's question, it would be helpful.

THE COURT:  Okay.  Well, towards that end, then, we could try our best, but we would need -- you know, we don't want to get jammed up ourselves between those two deadlines.  So could we compress the briefing schedule so that -- you know, as a practical matter for those who have clerked well know we're not going to look at

it until it's been fully briefed.  So can we compress the responsive reply deadlines so that it can be submitted to me with enough time to try to achieve that?

MS. KAPLAN-MARANS:  Your Honor, speaking for defendants, I think we would need at least 45 days.  I know we have 60 now. Perhaps we could do 45, that would give an extra two weeks on our end. As I mentioned, I expect we're going to need significant expert work here so I just want to leave enough time for that.

MR. DAVIS:  Just to follow up on counsel's commentary. Certainly we would like 60 days just based on what we expect will be coming down the pike.  But certainly we can push for 45 consistent with what the defendants have shared.

THE COURT:  You mean 60 days on the reply?

MR. DAVIS:  45 on the -- we had 60 on the reply?

THE COURT:  Right.

MR. DAVIS:  So I think 45 on the reply just to match defendants.  I'm not suggesting 45 just because that's what the defendants have suggested on the substance and the merits without knowing exactly what the defendants will say.  Yes, I have an idea at a very high level.  The reply can be a lot more work to address the defendants' arguments and concerns than the opening brief is and, as in all things, you know, the devil is in the details and we simply won't have those until we get their opposing papers.

So, for example, Your Honor, an expert will have to analyze what the defendants' expert has done.  So it's not simply replying on

the basis of, you know, distinguishing cases or facts or anything like this.  It also requires a significant amount of expert work that would complement the attorneys' work.

THE COURT:  Okay.  All right.  So let's make the class cert response two weeks earlier, due April 16th, and then the reply due May 29th.

MR. DAVIS:  Yes, Your Honor.

THE COURT:  May 29th on the reply which is the same deadline that you have for fact discovery.

MR. DAVIS:  Yes.  That's a very good observation. Certainly we hope that the vast majority of fact discovery would have been completed well in advance of that date, that's our hope and expectation.  If what actually occurs is there's a major production on the same -- you know, during the class certification process we would, of course, like the opportunity to raise that with the Court.  But I don't want to borrow worry today.  We hope that won't happen.  It's possible that it could and if it does we'll raise it with the Court at the appropriate time.

THE COURT:  Let me tell you that I'm willing to give you leeway on this because it's been so carefully negotiated and you all know better than I do what time tables you think.  But my tolerance for requests for extensions are not going to be the same as they are in other cases.  Once we agree on these deadlines, these are pretty hard deadlines absent something completely unexpected that's occurred. So I hope everyone understands that.  This is not the starting point.

This is the end point; okay?

MR. DAVIS:  We understand that, Your Honor, and that means, you know, of course, if there are disputes consistent with the rules and the Court's standing order on civil litigation, we'll need to bring them to the Court's attention expeditiously.

THE COURT:  We will talk about that process before we recess here.

But speaking of -- you raised a good segue for my next point which is that given that we're all going to be operating in good faith here and not dumping sizable amounts of discovery on the eve of the deadline, I wonder whether we really need an entire month between the end of fact discovery and the deadline for identifying experts. I'm sure you all have already started that process, frankly, of identifying experts, and it's not going to be a situation where you're just starting to think about those issues after discovery is closed. So could those two things be happening in tandem so that we don't waste a month of no activity?

MR. DAVIS:  Practically speaking, I think the identification of the experts could happen sooner than service of the expert reports.  The expert reports themselves, you know, are very, very heavily dependent upon the completion of fact discovery so I would hesitate to commit to providing the opening expert reports to defendants on the same date that we identify experts if we can identify the experts, you know, well before the end of fact discovery.

THE COURT:  Identifying experts, is it helpful to have

that without the report in advance?  Does that help the other side start working or not really?

MR. DAVIS:  It's a judgment call here, Your Honor.  It's not hugely helpful.  It's a little bit helpful.  But I think to be helpful both sides need to provide the actual -- you know, the substance of the expert reports.

MS. KAPLAN-MARANS:  Yes.  Speaking for defendants, I agree with that, as well.  I mean, we typically do this at the same time so we're comfortable with it being completed and agree that this extra month post fact discovery will be something that we would need.

THE COURT:  You said would?

MS. KAPLAN-MARANS:  Yes.  Yes, Your Honor.

MR. DAVIS:  What happens, Your Honor, is that the dust has not settled on fact discovery is the experts who are, you know, very expensive for both sides, I presume, have, you know, an incomplete record.  It could lead to more document requests, incomplete expert reports, and less efficiency overall if that's the sort of practical consideration in sequencing of events there.

THE COURT:  Okay.  All right.  I'm presuming you all would say along the same lines in terms of the response, the rebuttal experts that you would need -- you need those 60 days?

MR. DAVIS:  Yes.  And I don't need to speak first every time, if counsel for defendants would like to.  Perhaps it's a bad habit.

What happens in these really large cases is there's

typically multiple experts and they're exchanged at the same time, as defense counsel mentioned, and it's quite a race to address all the issues and opposing counsel's experts' reports and 60 days as it is tends to be a very tight timeline.  That's based on experience and, again, a bit of a forecast not knowing exactly what the defendants' reports will say.

MS. KAPLAN-MARANS:  Yes, Your Honor.  We agree with that as well and we did try to take that all into account in coming up with the schedule and not to just, you know, make the time period as lengthy as possible.  There are prior experience in having been through this multiple times and what is actually reasonably possible for the parties to do.

THE COURT:  Well, given counsel's representations, then, I won't touch the other deadlines.

With regard to the class certification, obviously, you know, we'll make our best efforts to reach -- to get that ruling out sufficiently in advance of the summary judgment deadlines.  But given how far out we're talking about, obviously it's hard to predict what our workload will look like and what other pressing matters we have, but we'll do our best.

When it comes to the summary judgment briefing, that generally looks fine to me once it gets started.  What I would suggest is that one or both parties go ahead and file a motion at the same time that you're filing summary judgment motions for oral argument, if you would.  We most assuredly would have oral argument on this summary

14

judgment briefing.  But filing that motion will help flag it for us internally so that we can go ahead and get that scheduled and -- because of how many lawyers are involved and so many out of town, I would like to get that on the calendar even before the briefing is done so that we're not wasting time on that end.  That way we know sufficiently in advance when we're having argument on it and we can sort of work backwards from there in terms of planning for it so that we can try to get an opinion out as soon as we can after that argument; okay?  So if you would do me that favor and go ahead and file that at the same time that the initial motion is filed, that will help with scheduling.

MS. KAPLAN-MARANS:  Thank you, Your Honor.  We'll do that.

MR. DAVIS:  Yes, Your Honor.

THE COURT:  There's some other deadlines in here sort of internal to the discovery issues where you've used sort of language like first rolling production, substantial completion of document production, which are all sort of couched in sort of good faith operation.  I'm happy to sign an order that has those deadlines, but I would have a hard time enforcing it, right, because I don't know exactly what that means, there's a lot of subjectivity into that.  So I just want to flag that for you and again if you all know what you're talking about, that's fine, but it would be hard for me to compel that, if that makes sense.

MS. KAPLAN-MARANS:  Yes, Your Honor, understood.  We did

spend a lot of time, both parties, on that language so I think we're all comfortable with that language. I'm sorry to speak on your behalf, Mr. Davis. But I think we're all comfortable with that language. Just speaking for the defendants we do intend to work in good faith to make productions expeditiously and not to dump a major production at the last minute, as you mentioned earlier.

MR. DAVIS: Yes, I agree with counsel. The language is admittedly subjective, as the Court has noted, and the intention there is to provide some flexibility. So, you know, a first rolling production deadline doesn't mean that's the very first set of documents that we're going to request or demand so there's some flexibility there. On the other side of it, substantial completion, give the defendants some flexibility in when they complete the document production. The intention is not to have to come back to the Court to request changes to deadlines and we fear the Court that that's not going to happen in this case and perhaps in other cases, but certainly not in this case with such a lengthy fact discovery period from the Court's point of view.

THE COURT: Yes. I appreciate you recognizing that. Okay. Well, I squeezed two weeks out of each side, I'm going to call that a win for me.

I think there was some language in the scheduling report, if I recall, of contemplating sort of standing conferences with the court bimonthly, as I recall. I'm not inclined to do that just because, first of all, it would just be difficult scheduling-wise for

us.  But also I know Mr. Caplan and Mr. Roberts are familiar with my process for resolving discovery disputes, hopefully you've all seen that, it's part of my standing order that prohibits the filing of discovery motions and instead calls for whoever wants to raise the discovery issue to simply email chambers with a short summary of the issue and then we'll get a conference scheduled.  Unless you all have a strong need for those standing conferences, my inclination is just to leave it at that because we try to be really responsive to those requests and get things on the calendar quickly when there's a need for it.

My fear is that by having standing conferences it's going to provide, consciously or subconsciously, a disincentive for the parties to try to work out their issues because you know you have a conference coming up anyway and so you're just going to leave it and let me decide.  I feel like that extra step of writing a summary and requesting a conference will -- and obviously that process requires, first and foremost, that you have exhausted efforts to confer first.  Does anyone want to try to convince me why that's a bad idea?

MR. DAVIS:  Yes, Your Honor.  I'll speak to this point because I think it was the plaintiffs' suggestion to do these once-every-two-month status conferences.

We weren't particularly creative.  Judge Geraghty, May, Thrash have similar procedures, but I am very quick to recognize the efficiency built into this Court's standing order, particularly Paragraph 3F, regarding the submission of three-page letters, that's a

very efficient methodology, so perhaps this incremental status conference is not necessary and we'll just follow the Court's standing orders.

THE COURT:  Okay.  Well, why don't we at least -- I'm sorry.  Does someone else want to speak to that?

MR. CAPLAN:  Well, I wanted to take the blame for the suggestion because -- you know, we are very familiar with your process which is very efficient and we've never had any issue getting in front of you with regard to any discovery dispute.  But I just wanted to make the point that we have had the experience in a variety of other cases where just having hearings on the calendar actually encourages the parties to reach agreement and just keep things moving and really avoid disputes with the Court.  So I just wanted to give, you know, the benefit of our internal discussion.  It was actually my suggestion because of the success that we have experienced in other major cases with having those on the calendar.  And I'll tell you, just as an example, in the Equifax case, even though Judge May has had monthly conferences on the calendar, we have actually not had one in probably four or five months because miraculously within about three to five days prior to each conference, you know, the parties come to compromise because they don't want Judge May, you know, dropping the hammer on one of them.

So anyway, I totally recognize your schedule, Judge, and perhaps you might deny our request without prejudice just in the event that, you know, we end up having issues and we feel like that might be

helpful we might suggest raising it again.  But I completely understand you're very busy and, you know, the idea of having those routinely scheduled, especially if unnecessary, is, you know, burdensome on the Court.

THE COURT:  Okay.  Well, why don't we defer on the need for that at this point.  That's not at all to say that I'm not -- I want to be responsive to you to whatever you need to make sure that we're all keeping on track.  As you know, we have a very busy docket of cases.  I mean, right now I'm hovering over 400 civil cases.  But this case I would certainly put in the top 10, if not the top 5, of the most complex and, frankly, interesting cases that I have.

So it's certainly on our radar and if you need me for anything, please don't hesitate to reach out.  But it's just easier, from our perspective, to schedule that when an issue arises than to have something sort of called out so far in advance that could impede our ability to schedule other things.  So let's try to address things as they come that way we can revisit it, if we need, down the road.  But, again, if there's anything I can be helpful with, let me know just by emailing Ms. Brye and we'll get something scheduled; all right?

MR. DAVIS:  Yes, Your Honor.

THE COURT:  Okay.  Could I ask one of the counsel to sort of help prepare a proposed order along what we've discussed here?

MS. KAPLAN-MARANS:  We're happy to do that, Your Honor.

THE COURT:  Okay.  That would be great.  If you can

obviously share that with opposing counsel and then once you have agreement email that to Ms. Brye and we'll get that entered.

MS. KAPLAN-MARANS:  Great.  Thank you, Your Honor.

THE COURT:  Okay.  Great.

MR. DAVIS:  Thank you, Your Honor.

THE COURT:  I didn't love seeing on the schedule, of course, that there is no possibility of settlement.  Hopefully no one is being completely truthful when they make that representation.  You never want to say never.  I hope you're having that conversation with your respective client and that we can be having those discussions on an ongoing basis as you start this discovery process.

MS. KAPLAN-MARANS:  Yes, Your Honor.  Understood.

MR. DAVIS:  Message received, Your Honor.

THE COURT:  All right.  Anything else we can take up today?

MR. DAVIS:  Not at this moment from the plaintiffs' perspective.  We have a couple of issues that are percolating, perhaps might be ripe for the Court, but hopefully will never materialize into something that is ripe for the Court.

THE COURT:  Okay.

MS. KAPLAN-MARANS:  Nothing from defendants, Your Honor.  Thank you.

THE COURT:  Great to see you all.  Have a great 4th later this week and we'll look out for that proposed order.

MR. DAVIS:  Thank you, Your Honor.

THE COURT:  Thank you.  We're in recess.

(Proceedings concluded at 11:35 a.m.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

CERTIFICATE OF REPORTER


        I do hereby certify that the foregoing pages are a true and correct transcript of the proceedings taken down by me in the case aforesaid.


                        This the 16th day of July, 2025.




                        /S/ Alicia B. Bagley _____
                        ALICIA B. BAGLEY, RMR, CRR
                        OFFICIAL COURT REPORTER
                        (706) 378-4017